Gabrielli, J.
Subdivision 2 of section 125.25 of the Penal Law provides, in pertinent part, that “ [a] person is guilty of murder ” when “ [u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person ”.
The factual setting of the bizarre events of a cold winter night of December 30, 1970, as developed by the testimony, *410 including the voluntary statements of the defendants, reveal the following: During the early evening the defendants were drinking in a Rochester tavern along withjthe victim, George Stafford. The bartender testified that Stafford was displaying and “ flashing ” one hundred dollar bills, was thoroughly intoxicated and was finally “ shut off ” because of his inebriated condition. At some time between 8:15 and 8:30 p.m., Stafford inquired if someone would give him a ride to Canandaigua, New York, and the defendants, who, according to their statements, •had already decided to steal Stafford’s money, agreed to drive him there in Kibbe’s automobile. The three men left the bar and proceeded to another bar where Stafford was denied service due to his condition. The defendants and Stafford then walked across the street to a third bar where they were served, and each had another drink or two.
After they left the third bar, the three men entered Kibbe’s automobile and began the trip .toward Canandaigua. Krall drove the car while Kibbe demanded that Stafford turn over any money he had. In the course of an exchange, Kibbe slapped Stafford several times, took his money, then compelled him to lower his trousers and to take off his shoes to be certain that Stafford had given up all his money; and when they were satisfied that Stafford had no more money on his person, the defendants forced Stafford to exit the Kibbe vehicle.
As he was thrust from the car, Stafford fell onto the shoulder of the rural two-lane highway on which they had been traveling. His trousers were still down around his ankles, his shirt was rolled up towards his chest, he was shoeless and he had also been stripped of any outer clothing. Before the defendants pulled away, Kibbe placed Stafford’s shoes and jacket on the shoulder of the highway. Although Stafford’s eyeglasses were in the Kibbe vehicle, the defendants, either through inadvertence or perhaps by specific design, did not give them to Stafford before they drove away. It was sometime between 9:30 and 9:40 p.m. when Kibbe and Krall abandoned Stafford on the side of the road. The temperature was near zero, and, although it was not snowing at the time, visibility was occasionally obscured by heavy winds which intermittently blew previously fallen snow into the air and across the highway; and there was snow on both sides of the road as a result of previous *411 plowing operations. The structure nearest the point where Stafford was forced from the defendants’ car was a gasoline service station situated nearly one half of a mile away on the other side of the highway. There was no artificial illumination on this segment of the rural highway.
At approximately 10:00 p.m. Michael W. Blake, a college student, was operating his pickup truck in the northbound lane of the highway in question. Two cars, which were approaching from the opposite direction, flashed their headlights at Blake’s vehicle. Immediately after he had passed the second car, Blake saw Stafford sitting in the road in the middle of the northbound lane with his hands up in the air. Blake stated that he was operating his truck at a speed of approximately 50 miles per hour, and that he “ didn’t have time to react ” before his vehicle struck Stafford. After he brought his truck to a stop and returned to try to be of assistance to Stafford, Blake observed that the man’s trousers were down around his ankles and his shirt was pulled up around his chest. A Deputy Sheriff called to the accident scene also confirmed the fact that the victim’s trousers were around his ankles, and that Stafford was wearing no shoes or jacket.
At the trial, the Medical Examiner of Monroe County testified that death had occurred fairly rapidly from massive head injuries. In addition, he found proof of a high degree of intoxication with a .25%, by weight, of alcohol concentration in the blood.
For their acts, the defendants were convicted of murder, robbery in the second degree and grand larceny in the third degree. However, the defendants basically chaEenge only their convictions of murder, claiming that the People failed to establish beyond a reasonable doubt that their acts “ caused the death of another ”, as required by the statute (Penal Law, § 125.25, subd. 2). As framed by the Appellate Division (41 A D 2d 228) the only serious question raised by these appeals “ is whether the death was caused by [the defendants’] acts ” (p. 229). In answering this question, we are required to determine whether the defendants may be convicted of murder for the occurrences which have been described. They contend that the actions of Blake, the driver of the pickup truck, constituted both an intervening and superseding cause which relieves them *412 of criminal responsibility for Stafford’s death. There is, of course, no statutory provision regarding the effect of an intervening cause of injury as it relates to the criminal responsibility of one who sets in motion the machinery which ultimately results in the victim’s death; and there is surprisingly little case law dealing with the subject. Moreover, analogies to causation in civil cases are neither controlling nor dispositive, since, as this court has previously stated: “ A distance separates the negligence which renders one criminally liable from that which establishes civil liability ” (People v. Rosenheimer, 209 N. Y. 115, 123); and this is due in large measure to the fact that the standard or measure of persuasion by which the prosecution must convince the trier of all the essential elements of the crime charged, is beyond a reasonable doubt (In re Winship, 397 U. S. 358, 361). Thus, actions which may serve as a predicate for civil liability may not be sufficient to constitute a basis for the imposition of criminal sanctions because of the different purposes of these two branches of law. Stated another way, the defendants should not be found guilty unless their conduct “ was a cause of death sufficiently direct as to meet the requirements of the criminal, and not the tort, law.” (Commonwealth v. Root, 403 Pa. 571, 575; see, also, People v. Scott, 29 Mich. App. 549.) However, to be a sufficiently direct cause of death so as to warrant the imposition of a criminal penalty therefor, it is not necessary that the ultimate harm be intended by the actor. It will suffice if it can be said beyond a reasonable doubt, as indeed it can be here said, that the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused. (1 Wharton, Criminal Law Procedure, § 169.)
In People v. Kane (213 N. Y. 260), the defendant inflicted two serious pistol shot wounds on the body of a pregnant woman. The wounds caused a miscarriage; the miscarriage caused septic peritonitis, and the septic peritonitis, thus induced, caused the woman’s death on the third day after she was shot. Over the defendant’s insistence that there was no causal connection between the wounds and the death and, in fact, that the death was due to the intervention of an outside agency, namely, the negligent and improper medical treatment at the hospital, this court affirmed the conviction “ even though ths *413 medical treatment may also have had some causative influence ” (p. 277).
We subscribe to the requirement that the defendants’ actions must be a sufficiently direct cause of the ensuing death before there can be any imposition of criminal liability, and recognize, of course, that this standard is greater than that required to serve as a basis for tort liability. Applying these criteria to the defendants’ actions, we conclude that their activities on the evening of December 30, 1970 were a sufficiently direct cause of the death of George Stafford so as to warrant the imposition of criminal sanctions. In engaging in what may properly be described as a despicable course of action, Kibbe and Krall left a helplessly intoxicated man without his eyeglasses in a position from which, because of these attending circumstances, he could not extricate himself and whose condition was such that he could not even protect himself from the elements. The defendants do not dispute the fact that their conduct evinced a depraved indifference to human life which created a grave risk of death, but rather they argue that it was just as likely that Stafford would be miraculously rescued by a good Samaritan. We cannot accept such an argument. There can be little doubt but that Stafford would have frozen to death in his state of undress had he remained on the shoulder of the road. The only alternative left to him was the highway, which in his condition, for one reason or another, clearly foreboded the probability of his resulting death.
Under the conditions surrounding Blake’s operation of his truck (i.e., the fact that he had his low beams on as the two cars approached; that there was no artificial lighting on the highway; and that there was insufficient time in which to react to Stafford’s presence in his lane), we do not think it may be said that any supervening wrongful act occurred to relieve the defendants from the directly foreseeable consequences of their actions. In short, we will not disturb the jury’s determination that the prosecution proved beyond a reasonable doubt that their actions came clearly within the statute (Penal Law, § 125.25, subd. 2) and 11 cause [d] the death of another person ”.
We also reject the defendants’ present claim of error regarding the trial court’s charge. Neither of the defendants took exception or made any request with respect to the charge regard *414 ing the cause of death. While the charge might have been more detailed, appellants’ contention that the Appellate Division should have reversed for its claimed inadequacy in the interests of justice (CPL 470.15, subd. 3, par. [c]; subd. 6, par. [a]) may not be here reviewed, for the intermediate appellate court’s refusal to so reverse was exclusively within its discretion (People v. D’Argencour, 95 N. Y. 624; People v. Calabur, 178 N. Y. 463; see, also, Cohen and Karger, Powers of the New York Court of Appeals, § 155).
The orders of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Babin and Stevens concur.
Orders affirmed.