■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JARVIS STEWART, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered April 25, 1973, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence. Judgment affirmed. No opinion. Latham, Acting P. J., Cohalan and Brennan, JJ., concur; Munder, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum, in which Shapiro, J., concurs: This judgment should be reversed, on the law and the facts and in the interest of justice, and a new trial ordered. Defendant was charged with the murder of one Daniel C. Smith and was convicted of manslaughter in the first degree. Defendant, who returned home to his common-law wife on October 8, 1971 after a few weeks absence, found Smith there, and was told that Smith was her new boyfriend. Defendant ordered Smith out of the apartment and started "cutting at" him with a knife. This resulted in Smith's being taken to Kings County Hospital; the hospital record shows that he had one stab wound which required five stitches. While his wound was being repaired, the treating surgeons noticed that Smith had an incarcerated hernia. They immediately proceeded to correct it in order to avoid possible future complications. The hernia was completely unrelated to the stab wound. During the second operation Smith suffered a cardiac arrest and lost consciousness. He died about a month later. The cause of the cardiac arrest was never clearly pinpointed; the surgeon's report placed the blame on the anesthesiologist, while the latter's report indicated that the patient had simply suffered severe bronchial spasms. While the prosecution elicited testimony from the Deputy Chief Medical Examiner of the City of New York on his redirect examination to the effect that the stab wound had been a "competent producing cause of death", on direct examination the witness had stated, when asked his opinion of the cause of Smith's death, "he was admitted into the hospital with a stab wound and whatever occurred subsequent to that, I don't feel I should arrive at the conclusion or make the judgment. There is an anesthesia report which I read, and there is a surgeon's report, which I have read, and they are in direct contradiction to each other." Further, on recross-examination, the witness said that the cardiac arrest might have been due to shock resulting from the stab wound, from one of the operations, from complications while under anesthesia, or from a combination of all of these factors. Moreover, the witness testified that the sutured stab wound had healed by the time Smith died on November 8, 1971. In other words, there was a serious question in this case as to exactly what had caused Smith's death. Speaking to this point recently in *People v Kibbe* (35 NY2d 407), the Court of Appeals, in an opinion by Judge Gabrielli, stated (p 412): "There is, of course, no statutory provision regarding the effect of an intervening cause of injury as it relates to the criminal responsibility of one who sets in motion the machinery which

ultimately results in the victim's death; and there is surprisingly little case law dealing with the subject. Moreover, analogies to causation in civil cases are neither controlling nor dispositive, since, as this court has previously stated: 'A distance separates the negligence which renders one criminally liable from that which establishes civil liability' *(People v Rosenheimer,* 209 NY 115, 123); and this is due in large measure to the fact that the standard or measure of persuasion by which the prosecution must convince the trier of all the essential elements of the crime charged, is beyond a reasonable doubt *(In re Winship,* 397 US 358, 361). Thus, actions which may serve as a predicate for civil liability may not be sufficient to constitute a basis for the imposition of criminal sanctions because of the different purposes of these two branches of law. Stated another way, the defendants should not be found guilty unless their conduct 'was a cause of death sufficiently direct as to meet the requirements of the *criminal,* and not the *tort;* law.' *(Commonwealth v Root,* 403 Pa 571, 575; see, also, *People v Scott,* 29 Mich App 549.) However, to be a sufficiently direct cause of death so as to warrant the imposition of a criminal penalty therefor, it is not necessary that the ultimate harm be intended by the actor. It will suffice if it can be said beyond a reasonable doubt, as indeed it can be here said, that the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused. (1 Wharton, Criminal Law Procedure, § 169) [emphasis supplied]." The requirement that defendant's conduct had to be a "sufficiently direct cause of death" was never charged to the jury. In fact, the charge made no attempt to marshal the evidence which was favorable to defendant. There was no reference to the testimony as to the several possible causes of the cardiac arrest and no mention that the stab wound had healed by the time Smith died (see *People v Jackson,* 39 AD2d 557). The jury was left with the distinct impression that if it found that defendant had stabbed Smith, and that the wound had brought him to the operating table, it must find defendant responsible for Smith's death. The People rely, to some extent, on *People v Kane* (213 NY 260). However, the facts in *Kane* are clearly distinguishable from those at bar. In *Kane,* there was no real basis for the defendant's claim that the victim's death was due to the intervention of an outside agency, namely, negligent treatment at the hospital. As the court itself noted in that case, a finding of negligence based upon the evidence relied upon by the defendant "would have been purely speculative" *(People v Kane, supra,* p 269). In contrast, in the case at bar, there was substantial evidence (for instance, the surgeon's report) to suggest intervening negligence. Then too, the very nature of Kane's conduct belied his contentions. He had shot the victim at close range, hitting her at least three times. One bullet lodged in the victim's back, three inches from her spine, and a second lodged in her lung. There was more than ample evidence to sustain the coroner's testimony that the cause of death "was a pistol shot wound penetrating the lung and a septic peritonitis following an abortion (miscarriage)" *(People v Kane, supra,* p 268). There was a "sufficiently direct cause" between the gunshot in the lung and the miscarriage and the peritonitis. The same cannot be said for one knife wound requiring five stitches, and the incarcerated hernia and the cardiac arrest. Were I not voting for a new trial, I would vote to reduce the conviction to one for assault in the second degree and to reduce the sentence accordingly.