OPINION OF THE COURT
E. Leo Milonas, J.
The defendant was indicted on September 28, 1977 for two counts of murder in the second degree and arson in the third degree after he allegedly intentionally set fire to a couch, thus causing a serious fire on the fifth floor of an abandoned building at 358 East 8th Street in New York County. The New York City Fire Department, in responding to the conflagration, arrived to find the rear portion of the fifth and sixth floors burning. The firemen attempted to bring the situation under control, but making no progress and there being no additional assistance available, they decided to withdraw from the building. At that point, they were suddenly enveloped by a dense smoke, which was later discovered to have arisen from another independent fire that had broken out on the second floor.
Although this fire was also determined to have originated in arson, there is virtually no evidence implicating the defendant in its responsibility. However, the combination of the thick smoke and the fifth floor fire made evacuation from the premises extremely hazardous, and, in the process, Fireman Martin Celic sustained injuries from which he subsequently died. Accordingly, the defendant was accused of murder in the second degree for having, "Under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of death to another person,” thereby causing the death of Martin Celic, and with felony murder. The third charge of the indictment, arson, is not at issue for purposes of the instant application.
It is the defendant’s contention that the evidence before the Grand Jury is insufficient to support the first two counts. He argues that his conduct does not fall within the contemplation of subdivision 2 of section 125.25 of the Penal Law in that there is no proof, first, that he was aware of and then *741 disregarded a substantial and unjustifiable risk that someone might get killed as a result of his action and, secondly, that, in fact, such a danger existed since the building in question was "abandoned.” Similarly, felony murder requires a causal link between the underlying crime and the death, a connection which, in the defendant’s view, is here lacking.
There is remarkably little authority on precisely what sort of behavior constitutes "depraved indifference to human life.” In the leading case on the subject, People v Kibbe, (35 NY2d 407), the Court of Appeals affirmed the conviction of defendants who had abandoned their helplessly intoxicated robbery victim by the side of a dark road in subfreezing temperature, one-half mile from the nearest structure, without shoes or eyeglasses, with his trousers at his ankles, his shirt pulled up and his outer clothing removed. The court held that while the deceased was actually killed by a passing truck, the defendants’ conduct was a sufficiently direct cause of the ensuing death to warrant criminal liability and that (p 412): "it is not necessary that the ultimate harm be intended by the actor. It will suffice if it can be said beyond a reasonable doubt, as indeed it can here be said, that the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused.” (See, also, People v Stewart, 40 NY2d 692.)
Clearly, an obscure or merely probable connection between the defendant’s conduct and another person’s death is not enough to support a charge of homicide. (People v Stewart, supra.) In Stewart, the victim had been operated upon for a stab wound in the stomach inflicted by the defendant. After-wards, the surgeon performed an entirely unrelated hernia procedure on him, and he died. According to the court, "the prosecutor must, at least, prove that the defendant’s conduct was an actual cause of death, in the sense that it forged a link in the chain of causes which actually brought about the death” (p 697). In this instance, the possibility that death resulted from a factor not attributable to the defendant could not be ruled out beyond a reasonable doubt, since the patient would, in all likelihood, have survived except for the hernia operation.
Further, in order for an individual to be liable for murder, as opposed to manslaughter, it is not sufficient for him to have simply behaved in a reckless manner; it is essential that, acting recklessly, he manifested a depraved indifference to *742 human life. (People v Poplis, 30 NY2d 85.) In Poplis, the court decided that the defendant had been properly convicted of murder when he repeatedly administered physical beatings to his wife’s three and one-half-year-old child. (See, also, People v France, 57 AD2d 432, 434, in which the court declared that "the act must be 'perpetrated with a full consciousness of the probable consequences’ * * * and certainly be one which would support the observation that 'the imminently dangerous act, the extreme depravity of mind, and the regardlessness of human life, properly place the crime upon the same level as the taking of life by premeditated design’ ”.)
It is generally difficult to distinguish between conduct which is merely reckless, on the one hand, and conduct when it is reckless under circumstances evincing a depraved indifference to human life, on the other. However, having carefully examined the facts of the instant case, this court is satisfied that the evidence before the Grand Jury is sufficient to support the crimes charged against the defendant.
In his statement to an Assistant District Attorney, the defendant admitted having entered the premises at 358 East 8th Street and, at the rear of the fifth floor, having deliberately ignited the couch that started the fire. He also asserted that on the first floor he noticed three or four persons whom he believed to be "winos,” and he passed a number of other people as he left. His purpose in setting the fire was, he claimed, to destroy the building so that "winos” and "junkies,” whom he disliked, could no longer utilize it. Therefore, the building, while abandoned, was not necessarily unoccupied, a situation of which the defendant was apparently quite aware. As for the building itself, it was a wood frame tenement house in the , midst of a crowded neighborhood. A major conflagration — and the fire which the defendant began was a severe one — could easily have engulfed the surrounding area with considerable loss of life. The fire did, in fact, spread to a nearby structure, which was occupied. Under those circumstances, it is hardly credible that the defendant’s action was not of such a magnitude as to demonstrate a wanton and depraved indifference to human life. Fire is indeed, as the People argue, nonselective and uncontrollable in its destructiveness.
Moreover, the defendant’s conduct need not be the sole and exclusive factor in the victim’s death. In the standard established by People v Kibbe (supra) and People v Stewart (supra), *743 an individual is criminally liable if his conduct was a sufficiently direct cause of the death, and the ultimate harm is something which should have been foreseen as being reasonably related to his acts. It is irrelevant that, in this instance, the fire which had erupted on the second floor intervened, thus contributing to the conditions that culminated in the death of Fireman Celic. In Kibbe, the victim was killed when he was struck by a truck. This did not relieve the defendants in that case from criminal responsibility for his murder, as it does not absolve the defendant here. Certainly, it was foreseeable that firemen would respond to the situation, thus exposing them, along with the persons already present in the vicinity, to a life-threatening danger. The fire set by the defendant was an indispensable link in the chain of events that resulted in the death. It continued to burn out of control, greatly adding to the problem of evacuating the building by blocking off one of the access routes. At the very least, the defendant’s act, as was the case in Kibbe, placed the deceased in a position where he was particularly vulnerable to the separate and independent force, in this instance, the fire on the second floor.
Consequently, the defendant’s motion to dismiss the first count of the indictment is denied.
The defendant’s claim that there is no evidence showing a causal connection between the arson and the concomitant death sufficient to sustain the second count is also rejected for the reasons already set forth. Thus, the motion to dismiss the felony murder charge is denied as well.