OPINION OF THE COURT
Burton B. Roberts, J.
The evidence in the case as presented at trial was that on October 31, 1979 at closing time three men entered the offices of Harden Creations, a small jewelry manufacturing concern owned by the deceased. One of the men, allegedly the defendant, announced a robbery. Shots were fired and the defendant ran to the back of the premises. The deceased called to his nephew to take out a licensed weapon he carried and shoot which the nephew did. The robber also fired his weapon at this point. Mr. Guraj bleeding from two gunshot wounds then allegedly fled the scene with his two accomplices. Mr. Loucas was dead of a gunshot wound in the chest. No bullets were recovered either from the body of the deceased of from the body of the defendant *177 Guraj. A trail of blood led the police to a canvas mailbag in a stairwell in the same building where Guraj was found hiding and arrested.
In this felony murder prosecution, the evidence adduced could, conceivably, enable a jury to find that the bullet which killed the deceased Kyriakos Loucas was fired by one of the victims of the attempted robbery (namely, the nephew of the deceased, John Kikas) and not the defendant Vasko Guraj. At the outset of the trial the People indicated that they would request the court to charge that if the jury found beyond a reasonable doubt that the defendant was engaged in an attempted robbery and the homicide occurred during the course of this underlying felony, then it was immaterial who fired the fatal shot, be it the nephew or the defendant. It was the contention of the People that even if the nephew fired the fatal shot during the commission of the afore-mentioned crime, the defendant would still be guilty of felony murder. After research by the court and the Assistant District Attorney and several bench conferences on this issue with both counsel, the request to so charge was never formally made. Nonetheless the court feels that it should set forth in writing its reasons for charging that the jury in this case must find beyond a reasonable doubt as one of the elements of the felony murder count that the bullet which caused the death of Mr. Lucas came from a gun fired by the defendant, Vasko Guraj.
The felony murder doctrine is in effect a legal fiction which substitutes the intent to commit a denominated felony for the intent to kill. At common law any killing which occurred during the commission of a felony, even that of a fellow participant to the crime, would constitute felony murder. Courts and legislatures have moved in the direction of limiting and not expanding the common-law felony murder doctrine and New York is no exception. Subdivision 3 of section 125.25 of the Penal Law defining felony murder requires that the victim be a nóhparticipant to the crime, restricts the felonies which will serve as a predicate for the crime and requires that the killing be in the course and in furtherance of the underlying felony or the immediate flight therefrom.
*178 When a participant in the felony who does not commit the homicidal act is held criminally liable for murder it is based on an accomplice or agency theory and not on the negligence law concept of proximate cause or foreseeability. In those cases where a victim of a felony or a police officer coming on the scene is the direct cause of death, as opposed to an accomplice, any murder liability of the felon is based not upon the felony murder doctrine but upon a “depraved mind” murder theory. (See Commonwealth v Redline, 391 Pa 486; Commonwealth ex rel. Smith v Myers, 438 Pa 218; Taylor v Superior Ct of Alameda County, 3 Cal 3d 578; People v Kibbe, 37 NY2d 407; Gegan, A Case of Depraved Mind Murder, St. John’s L Rev 417; People v Arzon, 92 Misc 2d 739; People v France, 57 AD2d 432.) The commission of an armed robbery does not, in and of itself rise to the level of depraved indifference to human life. This is so even under the more liberal California statute on “depraved mind” murder (People v Washington, 62 Cal 2d 777). It is possible that the conduct involved in the attempted armed robbery in this case could conceivably meet the test of “evincing depraved indifference to human life” and justified an indictment for a count of “depraved mind” murder. In the absence of such a count, however, the court will not stretch the felony murder count in the indictment to cover this possible omission.
The court also charged in this case that justification or “self defense” had no place in the jury’s deliberations. Certainly under the facts of the instant case — and perhaps any case of this type — a person who is found by the jury to be engaged in an attempted armed robbery must be considered the initial aggressor and thus without the ambit of a justification defense (Penal Law, § 35.15, subd 1, par [b] ; subd 2, par [b]. It is therefore immaterial on this issue whether the nephew or the defendant fired first, once the jury has found beyond a reasonable doubt that the defendant was a participant in an attempted armed robbery before any shots were fired.