◼ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PAUL R. REAGIN, Respondent.—Levine, J. Appeal from an order of the County Court of Tompkins County (Barrett, J.), entered June 29, 1988, which granted defendant's motion to dismiss the indictment.

On October 13, 1987, defendant was driving his 1969 Chevrolet pickup truck in an easterly direction on State Route 222 a short distance from the Village of Groton, Tompkins County, when his vehicle struck and killed a woman, walking in the same direction on the highway, and her three-week-old child. Defendant was indicted on two counts of manslaughter in the second degree for the fatalities. The People appeal from County Court's dismissal of the indictment which was based primarily on the insufficiency of the proof before the Grand Jury that any criminally culpable conduct on defendant's part caused the victims' deaths.

There should be an affirmance. The evidence before the Grand Jury established that, in the vicinity of the accident, Route 222 was straight, gradually rising in an easterly direction, and consisted of one westbound lane and two eastbound

lanes. The speed limit in this section of the highway was 55 miles per hour. There was a 4-foot 9-inch paved shoulder adjoining the eastbound driving lanes. The People produced one eyewitness to the accident, a driver who had passed defendant just before the occurrence. He testified that defendant was proceeding at a speed of about 45 to 50 miles per hour when he passed him. He then looked through his rearview mirror and observed defendant swerve suddenly to the right when defendant's vehicle was about 20 feet from the victims and then "just hit right into her" on the paved shoulder of the roadway. Two State Department of Transportation truck inspectors who examined defendant's vehicle after the accident also testified as People's witnesses. According to them, the vehicle's braking and steering mechanisms and suspension were mechanically defective and below minimally acceptable standards. The over-all effect of the various faults in the steering mechanism was excessive play in the steering wheel, i.e., 10¾ inches, the minimum toleration being 7⅛ inches. This, according to the experts, would make it more difficult for a driver to maintain forward movement of the vehicle in a straight line and to turn the vehicle quickly or to compensate promptly for any sudden swerving of the vehicle. It was also their opinion that an experienced driver would have been well aware of the "sloppy steering" problem resulting from the defects.

Apart from the introduction of essentially exculpatory statements made by defendant to police officers, the remaining evidence consisted of measurements at the accident scene taken by investigating officers, the most significant of which involved "yaw" marks laid down by the tires of defendant's truck. The officers explained that yaw marks are caused when a vehicle continues to move forward with the front wheels turned sharply. There were such marks, starting in the dirt immediately adjacent to the shoulder, extending 29 feet 4 inches on the paved shoulder and 61 feet 3 inches on the outside eastbound driving lane. The yaw marks ended some 61 feet west of the location of the woman's body on the highway.

Based upon the foregoing evidence, we agree with County Court's conclusion that there was insufficient proof of criminal causation. The only defect in defendant's truck having any possible relationship to the happening of the accident, on the evidence submitted, was that of the steering mechanism. The People's experts denied that the excessive steering play would cause the vehicle to veer sharply unless the wheels struck a hard, solid object or a pothole, neither of which was estab-

lished. If, as the eyewitness testified, defendant turned suddenly only some 20 feet from the victims, there was no evidence adduced that the driver of a vehicle equipped with an acceptable steering system would have been able to avoid the accident. To the extent that the evidence could support an inference that defendant's vehicle veered off the eastbound travel lane at some greater distance from the victims, the proof was equally tenuous as to any causal relationship between the foreseeable risks from the steering defect and the happening of the accident. The yaw marks established that, in fact, defendant had successfully turned the wheels of the vehicle. The investigating officers conceded that they were not able to pinpoint the actual location of impact, nor did they identify the place where defendant first left the highway. Without these details, it becomes entirely speculative as to whether the steering defect, i.e., the slow responsiveness to a driver's turning of the steering wheel or, perhaps, a tendency of the vehicle to drift away from a straightforward movement, contributed to defendant's inability to avoid striking the victims. Thus, proof was even lacking that defendant's culpable conduct in driving an unsafe vehicle was a cause-in-fact of the fatalities *(see, People v Holt,* 109 AD2d 174, 177), let alone that it was a " ' "cause of death sufficiently direct as to meet the requirements of the *criminal,* and not the *tort,* law" ' " *(People v Warner-Lambert Co.,* 51 NY2d 295, 306, quoting *People v Kibbe,* 35 NY2d 407, 412 [emphasis in original]). Since this was the only theory of criminal liability relied upon by the People, dismissal was proper.

Order affirmed. Kane, J. P., Casey, Levine, Mercure and Harvey, JJ., concur.