OPINION OF THE COURT
Rena K. Uviller, J.
Police Officer Anthony Dwyer and his fellow officers interrupted an armed burglary and robbery of a McDonald’s restaurant at 3 o’clock in the morning. Defendant and his cohorts had broken into the premises with a sledgehammer and were terrorizing employees at gunpoint when the uniformed officers arrived. Defendant fled to the darkened roof of the restaurant through a hatch and Officer Dwyer followed immediately behind him. When other officers reached the roof seconds later, they discovered Officer Dwyer writhing in agony 25 feet below; he had either fallen or had been pushed over a small retaining wall and was wedged in a narrow well between adjacent buildings. Efforts to save him were unavailing and by the time he was reached 45 minutes later, Officer Dwyer was dead.
The defendant, who was captured the next day, was indicted for various counts of burglary and robbery and with felony murder for having caused the death of Officer Dwyer "in the course of and in furtherance of * * * or * * * immediate flight” from the underlying crimes. (Penal Law § 125.25 [3].) The officer’s tragic death raises two interrelated issues. First, can the defendant be criminally liable for the officer’s death in the absence of evidence that he actually pushed the officer off the roof. That is, can the defendant be said to have "caused” the death if the officer tripped or fell off the roof without any physical contact between the two men?[1] Second, is the law of causation circumscribed or otherwise affected where the prosecution is for the statutory crime of felony murder as opposed to the common-law crimes of intentional or reckless (depraved indifference) murder? Does the same causation analysis apply?
*501 In People v Kane (213 NY 260), the defendant shot a pregnant woman, thereby inducing a miscarriage; the miscarriage, along with possible medical negligence, caused peritontis which in turn caused her death three days after the shooting. Affirming the murder conviction the court ruled that criminal liability attaches where the victim’s death is a reasonably foreseeable consequence of the defendant’s actions; that causation exists where the defendant’s conduct bears a sufficiently direct relationship to the fatal result and despite other contributory causes.
The necessary link between the conduct of the accused and the harmful result was elaborated upon in People v Kibbe (35 NY2d 407). There, the defendant threw the intoxicated victim out of his car during a blizzard and left him next to a deserted road without his coat, shoes or glasses; within a half hour the victim, who had crawled onto the highway, was struck and killed by a passing motorist. Affirming the murder conviction, the Court of Appeals held that the defendant’s conduct was a sufficiently direct cause of death and that the intervening circumstances of the weather, the victim’s intoxication, his crawling onto the road and the passing motorist were no bar to criminal liability. "It will suffice”, the court wrote, "if it can be said beyond a reasonable doubt * * * that the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused.” (People v Kibbe, supra, at 412.)
In Matter of Anthony M. and the companion case of People v Cable (63 NY2d 270), elderly victims of a purse snatch and a burglary, respectively, suffered heart attacks several days after the crime, having shown no signs of heart trouble in the immediate aftermath. Concluding that the necessary causative link existed between the defendants’ conduct and the fatal result, the court wrote: "For criminal liability to attach, a defendant’s actions must have been an actual contributory cause of death, in the sense that they 'forged a link in the chain of causes which actually brought about the death’ * * * A defendant’s acts need not be the sole cause of death; where the necessary causative link is established, other causes * * * will not relieve the defendant of responsibility * * * Even an intervening, independent agency will not exonerate defendant unless 'the death is solely attributable to the secondary agency and not at all induced by the primary one’ ”. (Matter of Anthony M., supra, at 280.)
*502 From these cases a two-pronged test of causation emerges. First, the defendant’s conduct must be an actual cause of death. The defendant’s act need not be either the sole or even the major cause. But the defendant’s conduct must be an operative, contributory cause. If the harmful result is attributable entirely to other factors (see, People v Stewart, 40 NY2d 692) and not at all induced by the defendant’s own conduct, he is not criminally liable no matter how morally blameworthy he may have been.
Second, in addition to being an actual or operative cause of death, the defendant’s conduct must bear a sufficiently proximate or direct relationship to it. That is, the death must be a reasonably foreseeable consequence of the defendant’s actions. If the fatal result is too remote or attenuated from the defendant’s action, if the death is but an obscure, speculative or merely possible consequence of the defendant’s conduct, then that conduct cannot be said to have "caused” the harmful result. The result is not rendered unforeseeable just because one or more intervening, concurrent factors may have contributed to it. In other words, the defendant’s conduct must be an actual, contributory cause and the fatal result must be reasonably anticipated. Death must not occur through an unforeseeable or only remotely foreseeable chain of events.
In this case, even if the defendant never touched Officer Dwyer, that is, assuming a fall with no physical contact between the two, the defendant’s conduct was nonetheless an actual and operative cause of the officer’s death. Had the defendant not been fleeing from an armed felony across the darkened roof with the uniformed officer in hot pursuit, Officer Dwyer would not have fallen to his death. Had the defendant not been doing what he did, when he did it, and where he did it, the officer would not have died. The defendant set in motion a chain of events which led to the officer’s death.
Moreover, the officer’s fatal fall was a reasonably foreseeable consequence of the defendant’s conduct. It can reasonably be anticipated that an officer interrupting an armed felony would pursue the culprit across a rooftop. Further, that the officer, in the darkness and in the excitement of the chase might fail to see a drop-off or might trip over a small wall is neither a remote, speculative or unlikely eventuality. That danger inhered in the situation. The intervening condition of the roofs surface does not render the fall less foreseeable. And absent sheer recklessness by the officer, it is irrelevant if *503 hindsight reveals that he might have taken greater care to prevent falling. The fatal fall, occurring as it did in the immediate pursuit of the defendant, was not an obscure or attenuated event. Rather, it was eminently foreseeable — a likely and direct consequence of defendant’s flight across the darkened rooftop.
That the defendant did not touch the officer or have any physical contact with him is irrelevant. In People v Ingram (67 NY2d 897), the defendant broke into the victim’s home and was confronted by the latter pointing a gun at him. The victim ordered the defendant to lie face down on the floor and called the police. After the police arrived and arrested the defendant, the victim collapsed and died. Affirming the conviction, the court held that the mere stress of finding a burglar in his home, insofar as there was evidence that the stress induced a heart attack, satisfied well-established principles of causation. (See also, People v Lozano, 107 Misc 2d 345.)[2]
The causal connection in this case, moreover, is unaffected by the fact that the defendant has been charged with the statutory crime of felony murder rather than the common-law crimes of intentional or reckless (depraved indifference) homicide. In formulating standards of causation, our courts typically attach little or no significance to the nature of the crime charged. (See, e.g., People v Kane, 213 NY 260, supra [intentional murder]; People v Kibbe, 35 NY2d 407, supra [depraved indifference murder]; Matter of Anthony M., 63 NY2d 270, supra [reckless manslaughter]; People v Cable, 63 NY2d 270, supra [felony murder]; People v Ingram, 67 NY2d 897, supra [felony murder].) Yet the felony murder nature of this case bears further analysis in light of People v Ramos (116 AD2d 462), which although factually and analytically distinguishable, appears to rest upon that feature.
In Ramos, the defendant was charged under our present felony murder statute with having shot and killed the victim in the course of a burglary. In response to a jury question, the *504 trial court instructed that as long as the jury found that the gun-wielding defendant had caused the death by setting in motion the events that led to the shooting, it was irrelevant whether the victim was shot by the defendant or by the victim’s own wife. (According to the defense the wife had interrupted the burglary, struggled with the defendant and accidentally shot her husband.) On the surface it would appear that the Trial Judge’s instructions fully conformed to established principles of causation. But the Appellate Division reversed. Relying upon People v Wood (8 NY2d 48), its Per Curiam opinion observed that under the present felony murder statute, in order to find causation the jury must conclude that "the defendant or another participant [in the crime] actually commit[ted] the homicidal act”. (People v Ramos, supra, at 463.)
In relying upon Wood, Ramos (supra) brought itself within that narrow class of felony murder cases where a person other than the accused or his accomplice — as distinguished from some superseding or intervening condition — was the immediate agent of death. In such cases, that is, where a person other than a participant in the felony delivered the fatal blow, there has been an historical reluctance to hold the defendant accountable for felony murder. (People v Wood, 8 NY2d 48, supra; People v Giro, 197 NY 152; People v Udwin, 254 NY 255; People v Castro, 141 AD2d 658; People v Guraj, 105 Misc 2d 176; cf., People v Kibbe, 35 NY2d 407, supra [conviction for depraved indifference murder upheld where victim was killed by passing motorist].) In this case there was, of course, no evidence that any person other than defendant caused Officer Dwyer to fall from the roof and is therefore beyond the ambit of Ramos. Yet the rationale of Ramos, inasmuch as it relied upon People v Wood (supra), bears reexamination: Wood interpreted a felony murder statute very different from our own.
In Wood, the defendant was charged with felony murder under former Penal Law § 1044. He had initiated a gun battle with the police outside a tavern during which the tavern owner, in an effort to assist the police, shot and inadvertently killed two people. The defendant was indicted for those deaths. Affirming the indictment’s dismissal, the Court of Appeals observed that it was "not concerned with the application of the rules of causation and foreseeability” because of the "peculiar wording of our statute”. (People v Wood, supra, at 53.) The court noted that the statute (unlike the present statute) expressly required that the lethal blow be delivered *505 by the accused (or his accomplice). Our own felony murder statute has rejected the "peculiar wording” of the former statute and has, significantly, substituted the general language of causation.[3]
Another major distinction between the former and present felony murder statutes is that former Penal Law § 1044 applied to deaths occurring in the course of any felony, and not just the violent felonies expressly designated by the present statute.[4] Accordingly, it was necessary to construe the old statute in such a manner as "to exclude rare instances of accidental or not reasonably foreseeable fatality, and especially those which might happen to occur in a most unlikely manner in the course of a non-violent felony.” (Staff Notes of Commn on Revision of Penal Law, Proposed NY Penal Law, McKinney’s Spec Pamph 1964, at 340; see also, Staff Comments of Commn on Revision of Penal Law, Revised Penal Law, McKinney’s Spec Pamph, 1965, at 275.) The present statute obviates this concern by limiting its application to specific violent felonies, thereby assuring that "the malice of the underlying felony that is attributed to the felon” is worthy of punishment for murder if his conduct results in death. (People v Wood, 8 NY2d 48, 51, supra.) In light of the significant distinctions between our felony murder statute and the one with which Wood was concerned, it is arguable that a felon who sets in motion a chain of events (for example, initiating a shoot-out) that leads to death at the hands of a nonparticipant is guilty of felony murder.
In sum, this case does not involve a death caused by anyone other than a participant in the felony. Thus, it is not governed by the concerns of Wood or Ramos (supra), even assuming, arguendo, that those concerns are still viable. Rather, ordinary laws of causation apply. As long as the defendant’s *506 conduct in fleeing across the darkened roof with the officer right behind him was an actual and operative cause of the officer’s death and, in addition, the officer’s fatal fall was a reasonably foreseeable consequence of that conduct, the defendant is criminally accountable for it.

. Although there was trial evidence that the defendant did push or kick the officer over the roof, the issue of a noncontact fall arose in three ways: before trial the People moved to amend the bill of particulars to add, as an alternate theory of causation, that the defendant by fleeing across the darkened roof with the officer directly behind him, caused the officer to fall even if he never touched him; also, the defense moved to dismiss for insufficiency unless contact was proved; finally, the defense took exception to the court’s instructions which permitted the jury, so long as it applied the principles set forth herein, to find causation even if the defendant had no physical contact with the officer.

. I respectfully disagree with the Trial Judge in People v Flores (124 Misc 2d 478), who concluded that causation requires some sort of contact between the defendant and the victim. In Flores, the defendant was in immediate flight from a robbery and led the police on a very dangerous high-speed chase on a curving road. One officer was killed and another seriously injured when their pursuing vehicle crashed into an abandoned truck. Since the Trial Judge granted a trial order of dismissal without submitting the relevant charges to the jury, we are deprived of the benefit of appellate review of his determination.

. Compare, former Penal Law § 1044 "The killing of a human being * * * is murder in the first degree, when committed * * * by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise” (emphasis added), with Penal Law § 125.25 (3): "A person is guilty of murder in the second degree when * * * [a]cting either alone or with one or more other persons, he commits or attempts to commit robbery, burglary, kidnapping, arson, rape * * *, sodomy * * *, sexual abuse * * *, or escape * * * and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant * * * causes the death of a person other than one of the participants” (emphasis added).

. The current statute also extends the felony murder doctrine to deaths caused in immediate flight from the designated felony.