THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEXANDER BROWN, Appellant. [597 NYS2d 395] —Judgment of the Supreme Court, Bronx County (Daniel Sullivan, J.), rendered June 7, 1991, after trial by jury, convicting defendant of attempted murder in the first degree and first degree robbery (two counts) and sentencing him to two concurrent terms of from eight and one-third to twenty-five years on each robbery conviction and a consecutive term of twenty years to life on the conviction of attempted murder in the first degree, is unanimously reversed, on the law, and the matter remanded for a new trial.

On June 16, 1988, at about 5:00 A.M., in the area of 180th Street and Mapes Avenue in the Bronx, defendant Brown and Evan Riley exited the rear seat of a dark colored Chevrolet occupied by two other occupants in the front seat. Defendant and Riley approached Uzell McFarland and his cousin Fred

Hall who were performing some repair work on an auto. Riley snatched a gold chain from McFarland's neck and when McFarland attempted to pursue, defendant Brown displayed a gun causing him to stop. Brown and Riley then returned to the Chevrolet which fled the scene. Hall and McFarland entered their vehicle and gave chase. At one point, McFarland used a baseball bat to break a rear window of the Chevrolet. In response, the defendant fired two shots at the McFarland vehicle from 20 feet away. After this, uniformed Police Officers George Bonafacio and Michael Neidhardt joined the pursuit until Aqueduct Avenue and Evelyn Place where defendant's Chevrolet crashed into a parked vehicle. Officer Bonafacio and Mr. McFarland chased the two front occupants who fled from the scene (and were never captured). Officer Neidhardt, who had remained at the scene with Mr. Hall, approached the vehicle, and with gun drawn, ordered the two rear seat occupants, defendant and Riley, to exit the Chevrolet. Defendant pushed Riley to force him out of the car first and fired a shot at the officer who had retreated to the rear of the patrol car for cover. When the officer returned fire, the defendant ran to the front of the patrol car. Despite the fact that the officer fired two shots at him through the rear windshield of the police car, the defendant continued to move toward the officer. Officer Neidhardt ran to a nearby tree and defendant fired at him again. When the officer stumbled, fell and began to run to another tree the defendant fired again, and when Officer Neidhardt took cover behind a tree, defendant walked toward him with his gun, a revolver with an extremely large barrel held in front of him, and uttering an obscenity at the police officer. At that time, Riley was in the passenger seat of the police car and yelled for defendant to get into the patrol car. Defendant did so and after a short pause drove off in the car.

Police Officers Ralph Caiazzo and John Kennedy, in uniform, in an unmarked police car, responded to the radio run that a marked police car had been hijacked and spotted the police vehicle whose rear windshield was missing and gave chase. Officers Kevin Kelly and Michael Clohessy, who also heard the radio report, joined in the chase as did Sergeant Joseph Hourihan, who was in a marked police car with Officers Frank McCoy and Maureen Firth. Defendant, who was driving the stolen police car, veered across at least one traffic lane and crashed into Sergeant Hourihan's vehicle, and continued to flee in a northbound direction on the Grand Concourse.

At 184th Street and the Grand Concourse, the stolen vehicle began to make a left turn onto 184th Street and Officer Caiazzo observed defendant point a gun with an extremely long barrel out the window of the vehicle and fire several shots at him and Officer Kennedy. As the car continued to turn, Officer Caiazzo saw Riley also fire several shots in their direction using what appeared to be the same gun that defendant had fired earlier.

On Morris Avenue and 182nd Street, defendant lost control of the car and crashed into a parked vehicle. He and Riley exited and ran in different directions from the scene. Sergeant Hourihan who had pursued defendant, caught and with the assistance of other officers, handcuffed defendant, after a violent struggle. In the police car with Riley, who had been apprehended by other officers, defendant directed obscenities at the officers and told them he had AIDS and would bite them. When defendant was taken to the hospital for treatment of injuries, he again told the officers he had AIDS, and threatened to kill them.

During the chase, Housing Authority Police Officers Donald Plunkett and Gary Peaco who were responding to a report that a police car had been stolen, collided with an ambulance at 149th Street and the Grand Concourse. Officer Peaco died from injuries sustained in the collision between the patrol car and the ambulance.

The defendant maintains that the People failed to prove his guilt of attempted murder in the first degree of Police Officer Caiazzo beyond a reasonable doubt. Having heard all the evidence concerning the pursuit, the firing of shots and the position of the various police vehicles during the chase, however, the jury chose to credit Officer Caiazzo's testimony. Since this Court must view the evidence in the light most favorable to the People *(People v Malizia,* 62 NY2d 755, *cert denied* 469 US 932), the trial testimony of Officer Caiazzo that defendant reached out of a side window and fired a gun in his direction during the pursuit, established, by itself, every element of attempted murder in the first degree. In addition, moreover, the jury had before it the testimony of Officer Sean Maloney that he saw defendant driving the stolen police vehicle holding a gun with an unusually large barrel as he drove; that another officer recovered a gun with such a large barrel from the scene where Riley had been apprehended; that Viola Jones had seen defendant fire a gun which looked just like the recovered gun; and that spent shells recovered from defen-

dant's apartment had been fired from this gun with an eight-inch long barrel.

Nevertheless, we find that the trial court erroneously denied defendant's pre-trial motion to dismiss the counts in the indictment charging defendant with murder in the second degree and assault in the first degree arising out of the collision between the ambulance and the Housing Authority patrol car leading to the death of Officer Peaco and physical injury to Officer Plunkett. Defendant's actions were not *"a sufficiently direct cause* of the ensuing death" for the imposition of criminal liability *(People v Kibbe,* 35 NY2d 407, 413 [emphasis in original]). In *Kibbe,* the Court of Appeals concluded that, "to be a sufficiently direct cause of death so as to warrant the imposition of a criminal penalty therefor, it is not necessary that the ultimate harm be intended by the actor. It will suffice if it can be said beyond a reasonable doubt * * * that the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused." *(Supra,* at 412, citing 1 Wharton, Criminal Law Procedure § 169.)

Although the People maintain that the evidence before the Grand Jury was sufficient to sustain these charges, a review of the minutes fails to support this claim. On the facts given above there was a lack of legally sufficient evidence demonstrating that defendant's action was a sufficiently *direct* cause of the ensuing death. Nor can it be asserted "that the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused" *(supra,* at 412). Even viewing the evidence in the light most favorable to the People, as we must do, it is clear that the prosecution never established a prima facie case.

The People also contend that no prejudice can be attributed to the fact that the jury heard these charges, since defendant was acquitted of them. We note, however, that the prosecution was permitted to admit, before the jury, substantial evidence concerning the death of Officer Peaco and the injuries sustained by Officer Plunkett. This evidence included highly inflammatory and graphic descriptions of the Officer's ejection from the police car and his propulsion a distance of eighty-nine feet on his side and face, giving rise to skull and other injuries which left a trail of blood on the road bed. Under the facts of this case, where defendant was on trial for the attempted murder of other police officers, the introduction of this testimony was highly prejudicial and deprived defendant of a fair trial.

The trial court further erred in permitting the People to introduce defendant's postarrest statements, "in which he threatened to kill the arresting officers or bite them and infect them with AIDS". Initially, defendant preserved this issue by raising an objection that the introduction of these statements would be "highly prejudicial", before the commencement of the trial. While the statements had some relevance to defendant's intent as to the crimes for which he was convicted, the unfair prejudice to the defendant, under the circumstances of this case, outweighed the probative value of this evidence *(see, People v Scarola,* 71 NY2d 769, 777). Moreover, the prosecution's summation exacerbated the error by referring to this highly prejudical postarrest conduct of defendant *(see, People v Manning,* 92 AD2d 695).

We have examined defendant's remaining contentions and find them to be without merit. Concur—Carro, J. P., Rosenberger, Ellerin and Asch, JJ.