■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHAUN M. DARROW, Appellant. [691 NYS2d 189] —Mercure, J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered October 17, 1997, upon a verdict convicting defendant of the crime of assault in the first degree.

After an evening of heavy drinking, a verbal dispute erupted between Shane Moelder (hereinafter the victim), on the one side, and defendant and Mark McLain, on the other. McLain and the victim, who was extremely intoxicated, decided to take the dispute out onto the front porch of the victim's apartment. There, McLain first struck the victim in the face with his fist, knocking him unconscious and flat on his back on the porch floor, and then proceeded to forcefully kick or "stomp" on the prostrate victim's head three or four times and punch him two or three more times. After McLain was finished, and in fact went to the car to leave, defendant went out onto the porch. Seeing the victim lying on the porch, defendant kicked him in the head an additional two to four times and left in the car with McLain.

Police and emergency personnel were summoned to the scene and the victim was transported to the hospital in a deep coma. Uncontroverted medical evidence established that the victim's condition was not the result of any direct brain injury such as hemorrhage, contusion or bruising, but was a hypoxic injury. Specifically, the coma was caused by a lack of oxygen to the victim's brain as a result of his airway being blocked with blood and vomitus, which had been aspirated due to a diminished gag reflex as a result of blunt force concussion and the victim's extreme intoxication. Defendant and McLain were each indicted for (as relevant here) assault in the first degree.* Pursuant to a plea bargain, McLain pleaded guilty to that charge and testified at the ensuing trial of the charges against defendant. Convicted of assault in the first degree as defined in Penal Law § 120.10 (1) and sentenced to a prison term of 5 to 10 years, defendant now appeals.

In our view, there is merit to defendant's contention that the trial evidence was legally insufficient to support the jury's determination that he caused serious physical injury to the

---

* It is important to note that the indictment charged each of the actors with individually assaulting the victim. No count against either of them is based on an "acting in concert" theory (see, People v Dlugash, 41 NY2d 725, 731; compare, People v Kim, 255 AD2d 337; People v Hill, 251 AD2d 129, lv denied 92 NY2d 899).

victim. When, as in the case of assault in the first degree as alleged in the indictment against defendant, a crime involves both conduct on the part of the actor and specific harm resulting from that conduct, the appropriate standard of causation is whether the defendant's conduct was a " *'sufficiently direct cause'* " of the victim's injury (*People v Stewart*, 40 NY2d 692, 696-697, quoting *People v Kibbe*, 35 NY2d 407, 413 [emphasis in original]). "Thus an 'obscure or merely probable connection between an assault and [the injury sustained by the victim] will * * * require acquittal of the charge' " (*People v Stewart*, *supra*, at 697, quoting *People v Brengard*, 265 NY 100, 108; *see*, *Matter of Anthony M.*, 63 NY2d 270, 280-281). Although there is no question that the hypoxic injury sustained by the victim was life threatening and satisfied the statutory definition of serious physical injury (Penal Law § 10.00 [10]), the medical evidence adduced at trial tends to support (although does not compel) the conclusion that the victim had already sustained the hypoxic injury before defendant ever touched him. More to the point, however, not one of the three medical witnesses testifying on the issue of causation was able to eliminate McLain's conduct as the cause of the victim's serious injury or render an opinion to an acceptable degree of medical certainty that defendant inflicted it.

The People first produced Christian Tvetenstrand, a trauma surgeon who was called in by the hospital emergency department to treat the victim. According to Tvetenstrand, the victim sustained at least three and possibly more blows to the head. He was unable to attribute the victim's hypoxic injury to any one particular blow but testified that "perhaps one or two or three or multiple blows with a cumulative force * * * render[ed] his brain stem unable to perform its normal functions of respiration, respiratory drive and gag protection, to prevent aspiration of normal fluids". Tvetenstrand also stated that the victim's intoxication could have contributed to the depression of his gag reflex. Finally, when asked to assume that the victim was punched in the face by McLain, went down, was punched a couple of more times in the face and kicked several times and that defendant thereafter found the victim in an apparently unconscious state and kicked him violently in the face several times, Tvetenstrand stated that from a medical point of view one could not tell which of the blows contributed to the hypoxic injury without examining the victim after each blow.

Forensic pathologist James Terzian testified for defendant. According to Terzian, the most forceful of the blows inflicted upon the victim was a forceful "stomp" downward on the right

side of the victim's face. Further, based upon his examination of postinjury photographs of the victim and the tread pattern of the hiking boots worn by McLain and the sneakers worn by defendant at the time of the assault, it was his opinion that it was McLain who delivered that stomping blow. Ultimately, Terzian opined that the resulting "stomp injury" was the major cause of the victim's coma, with the others being "essentially superficial".

Last, the People produced forensic pathologist and Deputy Chief Medical Examiner Mary Jumbelic as a rebuttal witness. Jumbelic rejected Terzian's "single significant blow" theory and herself opined that the victim's hypoxic injury was caused by "a cumulative effect of the blows that [the victim] received to his head as well as the aspiration of the blood and [vomitus] into his airway". Nonetheless, on cross-examination, Jumbelic acknowledged that she could not state what the victim's condition was at the conclusion of the McLain attack or state to a reasonable degree of medical certainty that defendant did anything to make his condition worse.

In view of the People's inability to make a competent evidentiary showing that defendant's acts caused the hypoxia leading to the victim's coma (*see, People v Dlugash*, 41 NY2d 725, 731, *supra* [murder conviction reversed where the People failed to prove beyond a reasonable doubt that, at the time the defendant fired several shots, the victim was not already dead from shots fired earlier by another assailant]; *compare, People v Cicchetti*, 44 NY2d 803, 804-805 [evidence supported a finding that all wounds caused the victim's death and that the victim was still alive when the defendant shot him in the head]), the conviction of assault in the first degree cannot stand.

Our analysis need not end here, however. "Upon a determination that the trial evidence adduced in support of a verdict is not legally sufficient to establish the defendant's guilt of an offense of which he was convicted but is legally sufficient to establish his guilt of a lesser included offense", we are authorized to "modify the judgment by changing it to one of conviction for the lesser offense" (CPL 470.15 [2] [a]). We conclude that, viewed in a light most favorable to the People, the trial evidence was legally sufficient to establish the lesser included offense of attempted assault in the first degree (*see*, CPL 1.20 [37]; Penal Law § 110.00; *People v Santos*, 213 AD2d 302, *affd* 86 NY2d 869). In convicting defendant of assault in the first degree, the jury necessarily found that, in repeatedly kicking the victim in the head, defendant intended to cause serious physical injury (*see*, Penal Law § 120.10 [1]), a finding that is

not contested on appeal, and it cannot be seriously questioned that such conduct "tend[ed] to effect the commission of [the crime of assault in the first degree]" (Penal Law § 110.00; *see, People v Santos, supra*). Indeed, the circumstances underlying this case are highly analogous to those presented in *People v Dlugash (supra)*, where the Court of Appeals found that the Appellate Division had erred in not modifying a murder conviction to one of attempted murder (*see, id.*, at 737-738).

We shall therefore reduce the conviction to one of attempted assault in the first degree and remit the matter to County Court for sentencing (CPL 470.20 [4]). Based upon our disposition of the appeal, defendant's additional contention concerning County Court's charge on the element of causation is rendered academic and is found to lack merit in any event.

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is modified, on the law and the facts, by reducing defendant's conviction of the crime of assault in the first degree to the crime of attempted assault in the first degree; matter remitted to the County Court of Broome County for resentencing only; and, as so modified, affirmed.