**James O. MURRAY, III, Petitioner–Appellant,**

v.

**M. MCGINNIS, Superintendent, Respondent–Appellee.**

**Docket No. 01–2632.**

United States Court of Appeals, Second Circuit.

April 25, 2003.

Appeal from the United States District Court for the Southern District of New York (B.D.Parker, Jr., J.).

Robert A. Culp, New York, NY, for Petitioner–Appellant.

John J. Sergi, Assistant District Attorney (Joseph M. Latino, Assistant, District Attorney), for Jeanine Pirro, District Attorney of Westchester County, White Plains, NY, for Respondent–Appellee, of counsel.

Present: CALABRESI, F.I. PARKER, and SACK, Circuit Judges.

**SUMMARY ORDER**

**UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and it hereby is **AFFIRMED.**

Petitioner James O. Murray, III appeals from the district court's (B.D.Parker, Jr., J.) denial of his habeas petition. We affirm.

## BACKGROUND

Murray, incarcerated in the Westchester County Correctional Facility, was assigned to a "keep lock" block reserved for inmates with behavioral problems. "Keep lock" inmates are not allowed to travel outside their cells without physical restraints.

On the morning of January 19, 1995, Murray was to be transported to a dental clinic. Officer Farmer showed up with a chain-apparatus restraint that Murray believed to be a "DeJoseph's Restraint," the use of which (by prison procedures) requires a sergeant's authorization. Murray refused to don the shackles, and told Farmer to call in a sergeant. What started out as a verbal tiff between Farmer and Murray quickly escalated into a physical struggle, which played out in the corridor of the keep-lock block. Another inmate, Hassan Brown, came to Murray's aid and tackled Farmer from behind. An alarm call went out, and Officers Santos and Germano rushed to the scene.

Santos attended to Brown, who followed the officer's order to lie down and not move. Germano ran to help Farmer with Murray, but the two officers were unable to restrain him fully. Officer Minella then appeared, noticed that Brown was under control, and ran over to help Farmer and Germano get control of Murray. Minella and Murray wrestled briefly. Minella lost his footing, striking his knee on the slippery concrete floor. Moments later an emergency response team in protective gear showed up and got Murray under control. Minella then held back Farmer, who wanted to "clock" Murray. A fourth officer, Rose, who had been in the "control room" and had watched the events unfold, came out and "stomped" the now-restrained Murray. Murray, still exchanging taunts with Farmer, was then led off by the emergency response team.

Murray was charged in state court with four counts arising from his alleged assault on Farmer and two counts with regard to Minella. A bench trial took place. Trial testimony focused mostly on the Farmer-related counts. There was conflicting testimony as to who attacked whom. On one version of the story, Murray had only tried to defend himself (using a plastic chair as a shield) when Farmer, swinging heavy metal chains, had attacked him; on another, Murray was the aggressor throughout, and not even the three officers acting together were able to subdue him completely.

The trial judge, acting as fact-finder, acquitted Murray on the Farmer-related charges and found him guilty on those related to Minella. Both convictions were for Assault in the Second Degree, one pursuant to N.Y. Penal Law § 120.05(3) ("With intent to prevent a peace officer ... from performing a lawful duty ... he causes physical injury to such peace officer ..."), the other pursuant to § 120.05(7) ("Having been charged with or convicted of a crime and while confined in a correctional facility ..., with intent to cause physical injury to another person, he causes such injury to such person or to a third person.").

The judge discounted the testimony of Farmer and Rose, and of Murray and the inmates who testified on his behalf, but deemed Minella to be credible. Minella was, in any event, the only person other than Murray to testify as to Minella's involvement in the brawl. And Murray had little to say about Minella, except to confirm that Minella had tried to hold him down.

Before sentencing, the defense moved to set aside the verdict with respect to the two Minella-related counts. In denying this motion, the judge expressly found: (1) that Minella was performing a lawful act in attempting to assist his fellow officers, (2)

that Murray intended to prevent Minella from performing this duty, (3) that Murray intended to cause physical injury to Minella, and (4) that Murray did cause said injury.

At sentencing, Murray received terms of 1–3 years on each count. The judge specified that these terms were to run concurrently with one another, but consecutively to the sentence that was being served.

Murray appealed to the Appellate Division, arguing, inter alia, that the evidence was constitutionally insufficient to support his conviction. The Appellate Division affirmed summarily, and the New York Court of Appeals declined to grant certiorari.

Acting pro-se, Murray then filed a habeas petition in federal district court, pursuant to 28 U.S.C. § 2254. The district court denied his petition. A Second Circuit panel later granted a Certificate of Appealability on the narrow question of whether there was constitutionally sufficient evidence to support Murray's conviction. Accordingly, we consider whether the evidence was sufficient to find: (1) that Murray caused Minella's injuries, (2) that Murray intended to prevent Minella from carrying out a lawful duty, and (3) that Murray intended to physically injure Minella.

## DISCUSSION

This court reviews de novo the denial of habeas petitions. *See Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002).

On habeas review, a federal court may reverse a state court only if the state court's determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). For purposes of a sufficiency challenge, the con-

trolling Supreme Court precedent is *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Ponnapula*, 297 F.3d at 179 (using *Jackson* to assess a § 2254 sufficiency claim). *Jackson* frames the constitutional question thus: "viewing the evidence in the light most favorable to the prosecution," could "*any* rational trier of fact have found the essential elements of the crime beyond a reasonable doubt"? *Jackson*, 443 U.S. at 319.

Having carefully studied Minella's testimony, we believe that a rational fact-finder who credited Minella could have drawn the following conclusions, beyond a reasonable doubt.

1. That regardless of whether Murray or Farmer instigated their tussle, when Minella arrived on the scene and came to the aid of Farmer and Germano, the officers were not brutalizing Murray but were simply struggling for physical control over the thrashing, resisting inmate. (This was the officers' lawful duty, as Murray was not allowed out of his cell unrestrained.)

2. That when Farmer, Germano, and Minella were trying to get control over Murray, Murray was aiming to injure all of them. In Minella's words: "[Murray] was trying to kick, hit *anybody he could get his hands on*. He was on his back and punching and kicking at officers, just trying to hit them." (emphasis added).

These inferences suffice for the intent elements of the counts on which Murray was convicted (intent to resist Minella's performance of a lawful duty, and intent to injure Minella). As for causation, a fact finder could readily conclude that Murray's continued resistance (after Minella showed up on the scene) to Farmer and Germano's attempt to restrain him was (i)

a but-for cause of Minella's injury,[1] and (ii) a foreseeable cause of Minella's injury.[2] Murray's actions "clearly foreboded the probability" of Minella's injury. *See People v. Kibbe*, 35 N.Y.2d 407, 413, 362 N.Y.S.2d 848, 321 N.E.2d 773 (1974) (holding that, for purposes of criminal law, such a "forboding" of the injury that occurred establishes the element of causation).

We have considered all of Petitioner's arguments to the contrary and found them without merit. Accordingly, the judgment of the district court denying habeas relief is AFFIRMED.

---

1. If Murray had stopped resisting, Minella would not have joined the fray.

2. When one wrestles on a buffed concrete floor, kicking and throwing blows, it is foreseeable that one's opponent will slip and bang a joint on the concrete.