■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONNIE B. LAPAN, JR., Appellant. [734 NYS2d 648] —Lahtinen, J. Appeals (1) from a judgment of the County Court of Fulton County (Giardino, J.), rendered June 17, 1999, upon a verdict convicting defendant of the crimes of murder in the second degree, manslaughter in the second degree, burglary in the first degree, burglary in the second degree (two counts), conspiracy in the fourth degree and petit larceny, and (2) from a judgment of said court, rendered June 17, 1999, convicting defendant upon his plea of guilty of the crime of robbery in the second degree.

On the late night and early morning of July 27 and 28, 1998, 91-year-old Jessè House was awakened in the middle of the night by defendant and his accomplices during their burglary of her house. The burglars ordered House to stay where she was, disabled her telephone so she could not summon help and tied the bedroom door shut in an attempt to keep her from leaving her bedroom. House was found collapsed on the floor outside the confines of her bedroom at 8:00 A.M. the morning following the burglary and died from an intracerebral hemorrhage shortly thereafter. As a result, defendant was indicted for the crimes of murder in the second degree, manslaughter in the second degree, burglary in the first degree, burglary in the second degree (two counts), conspiracy in the fourth degree, grand larceny in the fourth degree and petit larceny (hereinafter the first indictment) and convicted after a jury trial of all counts but grand larceny. Defendant was sentenced as a second felony offender to an indeterminate prison term of 25 years to life on the murder conviction and concurrent lesser sentences on the other convictions.

The Grand Jury also returned a separate five-count indictment (hereinafter the second indictment) as a result of a burglary and robbery at gunpoint committed by defendant and another in the Town of Mayfield, Fulton County, on June 11,

1998. Immediately subsequent to his sentencing on the first indictment, defendant pleaded guilty to robbery in the second degree in full satisfaction of the second indictment and other unrelated criminal charges pending in Fulton County and waived his right to appeal. He was immediately sentenced to a determinate prison term of 10 years, to be served concurrently with his sentence for his convictions on the first indictment. Defendant now appeals both judgments of conviction.

Although defendant appeals from each of his convictions under the first indictment, he does not deny participating in the burglary. He argues, however, that the People failed to prove beyond a reasonable doubt that the burglary was a direct cause of House's intracerebral hemorrhage and resulting death and also failed to prove beyond a reasonable doubt that it was foreseeable that House would suffer a intracerebral hemorrhage and die as a result of the burglary. Defendant also argues, with respect to the first indictment, that the prosecutor's summation deprived him of a fair trial and County Court erred in failing to charge the affirmative defense set forth in Penal Law § 125.25 (3). Challenging his conviction on the second indictment, defendant claims that his plea and his waiver of his right to appeal were coerced as a matter of law and that he should be permitted to withdraw his plea. We turn first to defendant's appeal from his convictions on the first indictment.

The question to be answered on this appeal is whether the People proved beyond a reasonable doubt that the burglary and related criminal acts were a cause of House's intracerebral hemorrhage and ultimate death. For an act to be a "sufficiently direct cause of death" warranting criminal sanctions, it is "not necessary that the ultimate harm be intended by the [defendant]" (*People v Kibbe,* 35 NY2d 407, 412, *affd* 431 US 145). However, it must be proven beyond a reasonable doubt "that the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused" (*id.,* at 412). Barbara Wolf, the People's expert forensic pathologist and the person who performed House's autopsy, testified "to a reasonable degree of medical certainty that the cause of * * * House's death was the [stress occasioned by the] burglary of her residence which led to her intracerebral hemorrhage." Defendant's expert forensic pathologist, Nicolas Forbes, testified regarding the stress of the burglary inducing or causing House's cerebral hemorrhage, opining that "if there was such a stress [from the burglary] it certainly didn't help her condition, * * * but you can't say with absolute scientific

certainty that it did * * * because to a degree it's speculative, you don't just necessarily know." Defendant argues that Wolf's opinion, which forged the necessary link between the burglary and House's death, has no factual basis in the record (*see, People v Jones*, 73 NY2d 427, 430-431), nor any basis in medically accepted theories.

"A defendant's acts need not be the sole cause of death; where the necessary causative link is established, other causes, such as a victim's preexisting condition, will not relieve the defendant of responsibility for homicide" (*Matter of Anthony M.*, 63 NY2d 270, 280 [citation omitted]). Additionally, "the progression from injury to death, often unseen and not readily comprehended, will generally be a subject for expert medical opinion" (*id.*, at 280) and need not be established with "absolute certainty [to] the exclusion of every other possibility" (*id.*, at 280-281). While there is no evidence that defendant or any of his accomplices had any physical contact with the victim, a victim's death resulting from the stress induced by a criminal intrusion into a dwelling has been found sufficient to sustain a conviction for murder (*see, People v Ingram*, 67 NY2d 897; *People v Hayes*, 208 AD2d 1054, *lv denied* 85 NY2d 910; *see also, Matter of Anthony M., supra; People v Kibbe, supra; People v Burnett*, 205 AD2d 792, *lv denied* 84 NY2d 866). We find the People's proof, particularly Wolf's testimony, sufficient to meet their burden of proving beyond a reasonable doubt that House's death was causally related to the burglary, establishing more than a probable or possible connection between the burglary by defendant and his accomplices and House's death (*cf., People v Phippen*, 232 AD2d 790). Further, on this record, we find that Wolf's testimony was not "so baseless or riddled with contradiction that it was unworthy of belief as a matter of law" (*Matter of Anthony M., supra*, at 281; *see, People v Ingram, supra*, at 899; *People v Stewart*, 40 NY2d 692, 698-699). While defendant's expert characterized Wolf's opinion as speculative, he did not express disagreement with it and the jury, which was free to accept or reject Wolf's opinion, chose to accept it.

Defendant's related argument on this point stresses that the People have failed to prove beyond a reasonable doubt that House's death from an intracerebral hemorrhage was a foreseeable consequence of the burglary (*see, e.g., People v Roth*, 80 NY2d 239, 244-245). We disagree. In addition to Wolf's testimony, the People provided proof that one of defendant's accomplices, Tina Pepper, worked as a home health aide for the 91-year-old House, that defendant had observed House at her home shortly before the night of the burglary needing the

aid of a walker to ambulate and defendant had stated that this burglary was going to be a "cake job," all relevant evidence tending to prove defendant's awareness that House was infirmed and an obviously helpless victim. Viewing the evidence in the light most favorable to the People (*see, People v Contes*, 60 NY2d 620, 621), we find that the intracerebral hemorrhage suffered by this frail, defenseless 91-year-old woman was a consequence which should have been foreseen as being reasonably related to House's frightening, stressful discovery of defendant and his accomplices burglarizing her bedroom in the middle of the night and the additional stress of attempting to escape from her bedroom, where she was confined by defendant, to summon help.

We also find no merit in defendant's claim that he was deprived of a fair trial by the prosecutor's comments during her summation regarding the quality of the evidence. To the extent that this issue was preserved for our review (*see, People v Balls*, 69 NY2d 641), we find the prosecutor's remarks constituted fair comment in response to defense counsel's portrayal in his summation of the quality and sufficiency of the evidence (*see, People v Parker*, 220 AD2d 815, 816, *lv denied* 87 NY2d 1023; *People v Wrigglesworth*, 204 AD2d 758, 759).

We also reject defendant's contention that County Court erred by refusing to charge the statutory affirmative defense to felony murder set forth in Penal Law § 125.25 (3) (a)-(d). Defendant admitted that he was an active participant in the burglary, which the People's proof causally connected to the victim's intracerebral hemorrhage and her ultimate death. Additionally, Frank Warner, one of defendant's accomplices, testified that defendant disconnected House's telephone, he commanded House to stay put in her bedroom and defendant tied her bedroom door shut. Consequently, defendant cannot be said to have "had nothing to do with the killing itself" (*People v Bornholdt*, 33 NY2d 75, 86 [internal quotation marks omitted]) and, having failed to establish that he "[d]id not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof" (Penal Law § 125.25 [3] [a]), he was not entitled to that jury charge.

Finally, we reject defendant's claim that his guilty plea to robbery in the second degree and his waiver of his right to appeal in full satisfaction of the second indictment were not voluntary. Defendant does not contend that his plea and waiver of appeal were actually coerced, but attempts to imply coercion from the fact that the plea and waiver occurred immediately following his being sentenced to 25 years to life in prison on

the first indictment, "a time when he was vulnerable to being coerced into what appeared to be a favorable plea." The record belies this claim and reveals that plea discussions regarding the second indictment, including the terms of the plea bargain now appealed from, took place on the record well before his sentencing on the first indictment. Additionally, defendant's plea colloquy clearly establishes that his plea was knowingly, voluntarily and intelligently entered (see, People v George, 261 AD2d 711, lv denied 93 NY2d 1018).

Cardona, P. J., Mercure, Crew III and Carpinello, JJ., concur. Ordered that the judgments are affirmed.