■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEMARK D. BALLENGER, Appellant. [968 NYS2d 610]—

Rose, J.P. Appeal from a judgment of the County Court of Broome County (Cawley, J.), rendered July 18, 2011, upon a verdict convicting defendant of the crime of criminally negligent homicide (two counts).

Defendant was the front-seat passenger in a vehicle pursuing another vehicle at high speed and close range on a four-lane, limited access highway. When the two vehicles began to travel alongside each other, defendant grabbed the steering wheel and jerked it toward the other vehicle. The other vehicle escaped unscathed, but defendant's vehicle struck the guardrail, causing a one-car accident that obstructed one of the two westbound lanes. As oncoming westbound traffic negotiated the accident scene, it slowed and backed up. Approximately 30 minutes later and half a mile behind the scene of the original accident, a second and third accident occurred. One of the vehicles involved in the third accident—a five-car chain-reaction collision—caught fire and the gas tank exploded, resulting in the deaths of the two occupants. Based upon these deaths, defendant was charged with reckless endangerment in the first degree and two counts of criminally negligent homicide. A jury acquitted defendant of reckless endangerment, but convicted him of the criminally negligent homicide counts. County Court then sentenced defendant as a second felony offender to two concurrent prison sentences of 2 to 4 years, and he now appeals.

We are persuaded by defendant's argument that, even if his conduct rose to the level of criminal negligence (*see* Penal Law § 15.05 [4]), it cannot be considered to be a sufficiently direct cause of the victims' deaths so as to hold him criminally responsible (*see* Penal Law § 125.10).* We reach this conclusion after a careful review of the proof of the element of causation, beginning with the initial accident. The evidence at trial establishes that defendant caused the vehicle in which he was a passenger to crash into the guardrail of a bridge carrying the two westbound lanes of the highway over a river. The disabled vehicle then blocked the right-hand lane, reducing traffic in the area of the accident to one lane. Police responded to the scene, set up flares and called for a tow truck and for the Department of Transportation (hereinafter DOT) to respond. Some 30 minutes after the original accident, while still waiting for a tow

---

* Defendant's challenge to the legal sufficiency of the evidence is unpreserved (*see* People v Lane, 7 NY3d 888, 889 [2006]), however, we necessarily review the sufficiency of the evidence on each element in our review of the weight of the evidence (*see* People v McCray, 102 AD3d 1000, 1004 n 2 [2013]; *People v Newkirk*, 75 AD3d 853, 855 [2010], *lv denied* 16 NY3d 834 [2011]).

truck, traffic had backed up almost half a mile to the east when the second accident occurred. The driver of a minivan approached the backed-up traffic at a high rate of speed while distractedly tuning his radio. He slammed on his brakes, his minivan skidded out of control and hit a guardrail, and it eventually came to rest on the right-hand shoulder of the highway facing in the wrong direction. A DOT truck responding to the initial accident came upon the minivan, pulled over and activated its lights to warn motorists of the second accident. Within minutes of the second accident and approximately 20 to 30 feet away, the third accident occurred when the driver of the first of the five vehicles involved changed lanes in an attempt to avoid the DOT truck, rear-ending the second vehicle in this chain-reaction collision. The first vehicle was then rear-ended by a third vehicle, pushing the second vehicle forward into a fourth vehicle which, in turn, was pushed forward into a fifth vehicle. The force of these collisions caused the gas tank in the second vehicle to rupture and it then burst into flames, killing the driver and her daughter.

In determining whether defendant's conduct in causing the first accident can be considered to be a cause of the victims' deaths so as to impose criminal liability, we employ a two-step analysis. The first step is to examine whether defendant's conduct set in motion the events that led to the victims' deaths (*see People v DaCosta*, 6 NY3d 181, 185 [2006]; *People v Matos*, 83 NY2d 509, 511 [1994]). We agree with County Court's observation that this "but for" determination is easily reached here. Absent the initial accident caused by defendant, traffic would not have slowed down and there would have been no occasion for the subsequent accidents.

The second step of our analysis is more difficult. It requires a finding that defendant's conduct was a " 'sufficiently direct cause of the ensuing death[s]' " (*People v Stewart*, 40 NY2d 692, 697 [1976] [emphasis omitted], quoting *People v Kibbe*, 35 NY2d 407, 413 [1974]). "[A]n act 'qualifies as a sufficiently direct cause when the ultimate harm should have been reasonably foreseen' " (*People v DaCosta*, 6 NY3d at 184, quoting *People v Matos*, 83 NY2d at 511). A connection between the conduct and the death that is obscure or "merely probable" will not suffice (*People v Phippen*, 232 AD2d 790, 791 [1996] [internal quotation marks and citations omitted]). On the other hand, we note that the mere lapse of time will not necessarily serve to break the chain of causation (*see e.g. Matter of Anthony M.*, 63 NY2d 270, 275-276 [1984]; *People v Kibbe*, 35 NY2d at 410-411). Nor does a defendant's conduct need to be the sole cause of death in

order for criminal responsibility to attach (*see People v DaCosta*, 6 NY3d at 184; *People v Lapan*, 289 AD2d 698, 700 [2001], *lv denied* 97 NY2d 756 [2002]).

The case of *People v Kibbe* (*supra*) is instructive. There, the defendants left the victim stranded at the side of a darkened, isolated roadway in the freezing cold without his glasses while he was lightly clothed and visibly intoxicated (*id.* at 410). Approximately half an hour later, the victim was sitting in the middle of the roadway where he was struck and killed by an oncoming vehicle (*id.* at 411). In *Kibbe*, the evidence of causation was found to be sufficiently direct because the victim's death was a directly foreseeable consequence of the defendants' act of abandoning him on the side of the road (*id.* at 413; *see People v Matos*, 83 NY2d at 511). Simply put, the defendants' conduct directly involved the victim. The same can be said for cases where a robbery or burglary of a victim leads to a heart attack that causes the victim's death (*see e.g. Matter of Anthony M.*, 63 NY2d at 276-279), or where a police officer is killed while chasing a fleeing suspect (*see e.g. People v DaCosta*, 6 NY3d at 184; *People v Matos*, 83 NY2d at 511).

Here, the People failed to present evidence directly linking defendant's act to the victims' deaths (*see People v Stewart*, 40 NY2d at 698; *People v Phippen*, 232 AD2d at 791). Although the accident reconstructionist called as a witness by the People provided an opinion as to the sequence of the five-car collision, he could not estimate the speed of the vehicles involved, he did not attempt to reconstruct the initial accident and he offered no opinion to support the conclusion that the third and fatal accident was a foreseeable result of the initial accident (*compare Matter of Anthony M.*, 63 NY2d at 281; *People v Lapan*, 289 AD2d at 700-701).

Significantly, were we to consider the circumstances here in a civil tort law context, where the quantum of proof required to establish causation is much less (*see People v Warner-Lambert Co.*, 51 NY2d 295, 306 [1980], *cert denied* 450 US 1031 [1981]; *People v Kibbe*, 35 NY2d at 412), defendant's conduct would not be found to be the cause of the victims' deaths. In civil cases involving chain reactions, if traffic is able to avoid a negligently stopped vehicle but subsequent accidents occur, the negligence of the initial vehicle generally will not be considered the proximate cause of the subsequent accidents (*see e.g. Daley v Pelzer*, 100 AD3d 949, 950-951 [2012]; *Ali v Daily Pita Bakeries, Inc.*, 35 AD3d 330, 331 [2006]; *Good v Atkins*, 17 AD3d 315, 316 [2005]). Here, there is ample evidence that traffic was slowed and backed up for approximately 30 minutes after the initial ac-

cident, yet vehicles were able to negotiate the accident scene and avoid the disabled vehicle in which defendant had been a passenger. Furthermore, motorists had been warned about the initial accident by law enforcement's placement of flares on the road and there was evidence that the negligence of the drivers involved in the second and third accidents were intervening causes of the events leading to the deaths of the victims.

In short, the evidence here did not establish that defendant's conduct directly involved the two victims so as to impose criminal liability. Given the lack of evidence to support a finding that defendant's conduct was a sufficiently direct cause of the victims' deaths, the charges must be dismissed (*see People v Bleakley*, 69 NY2d 490, 495 [1987]).

Stein, Spain and McCarthy, JJ., concur. Ordered that the judgment is reversed, on the facts, and indictment dismissed.