OPINION OF THE COURT
Jerald S. Carter, J.
The defendant, James Ryan, by his attorney, Marc C. Gann, Esq., has brought an omnibus motion seeking the following relief:
1. (a) Release of the grand jury minutes to defendant and the court for review to determine whether the evidence presented was legally sufficient to support the charges in the indictment;
1. (b) Dismissal of counts 1 through 7 of the indictment on the ground that the evidence presented to the grand jury was not legally sufficient on those charges;
1. (c) Dismissal of the indictment due to a defective grand jury proceeding pursuant to CPL 210.35.
1. (a) Release of the Grand Jury Minutes
This court has already released the grand jury testimony of one witness to counsel for defendant which was utilized by counsel in this application. The court has received and reviewed the entire transcript of the grand jury proceedings in this matter. There is no need to release any further portions of the grand jury presentment. (CPL 210.30 [3].)
1. (b) and (c) Inspection of the Grand Jury Minutes/Defective Grand Jury Proceeding
Upon an inspection of the grand jury minutes, the court must view the facts presented in the light most favorable to the People. A synopsis of those facts finds that the evidence before the grand jury was legally sufficient to support the crimes charged in counts 8 through 16 of the indictment (CPL 210.30). With respect to counts 1 through 7, the court finds as follows.
On October 17, 2012, a little after 10 p.m., the defendant arrived at Three Cups Lounge located at 85 First Avenue, New York City. At 4:30 a.m. on October 18, 2012, the defendant decided to leave Three Cups Lounge and return home to Oak- *645 dale, New York located in Suffolk County. The defendant left the club alone and drove a grey 2010 Toyota Camry with New York registration DCA1254 through the Queens-Midtown Tunnel and onto the Long Island Expressway, eastbound.
The defendant was driving in the left lane approaching exit 35 of the Long Island Expressway when the front passenger side of his vehicle collided with the driver’s rear of a black BMW with New York license plate T615017C, which was traveling in the middle lane. The driver of the BMW testified that as he was preparing to go from the middle lane to the right lane in order to exit the highway, a Toyota Camry hit the back of his car and continued to drive away. The BMW suffered significant damage; the driver pulled over to the right side of the expressway and called 911.
The Camry driven by the defendant drove away from the accident and then appeared to suddenly stall in the middle lane of the expressway. As the result of this sudden stop, a red 2007 Honda Civic, traveling at 60 to 65 miles per hour, crashed into the defendant’s vehicle. The driver of the Civic was an off duty detective in the New York City Police Department. That detective testified that he was driving three car lengths behind the defendant’s Camry when it came to a sudden stop. While he tried to prevent the collision by swerving to the right, the front driver’s side of his car hit the rear passenger side of the defendant’s vehicle. The collision caused the defendant’s car to spin into the high-occupancy vehicle (HOV) lane and stop perpendicular to the expressway’s divider. The detective’s Honda spun approximately 180 degrees into the right lane facing westbound in eastbound traffic.
As the detective exited his car, he was approached by a truck driver from a EC. Richard truck which had stopped on the service road parallel to the Long Island Expressway (LIE). The truck driver, a former volunteer firefighter, had been trained in first aid care so he asked the detective whether he was injured. At that time the detective believed that he was not injured. Both he and the truck driver then continued across the road to see if the defendant, James Ryan, was injured but defendant was noncooperative. As per the detective’s testimony the defendant was pacing and was nervous and unsteady and yelling about the damage to his car.
A police car driven by Officer Joseph Olivieri arrived shortly thereafter. The marked police vehicle stopped in front of the detective’s red Honda and parked approximately three car *646 lengths west of detective’s vehicle in the right lane. The police car had its roof rack lights on as it remained parked. After Officer Olivieri came out of his vehicle and verified that the detective was not injured, Officer Olivieri then approached the defendant across the highway and the detective followed. The truck driver informed Officer Olivieri that he was a former firefighter and that he did not believe that the defendant suffered any injury. The EC. Richard driver asked Officer Olivieri if he wanted flares put up in the HOV lane since the lane was exposed to traffic. Officer Olivieri responded that another unit was on its way.
The detective then crossed the highway to return to his vehicle. The truck driver also crossed the highway to return to his parked truck and escorted another eyewitness who wanted to go back to his vehicle to retrieve his cigarettes. Officer Olivieri remained in the HOV lane near the defendant’s car. When the detective got back to his car, he heard a car accelerating behind him, he looked over his shoulder and saw a dark-colored SUV hit Officer Olivieri, who was standing at the driver’s side of the Camry in the HOV lane. The detective stated that this occurred three to four minutes after his accident with the Camry.
Another driver, who had professional driver training and experience, witnessed the accidents. He was heading eastbound on the LIE when he first observed the damaged BMW on the right shoulder and then saw the accident between the Camry and the Honda. He pulled over to the side of the road to see if everyone was alright. The driver of the Honda was out of the car and seemed coherent and calm. He stated that there were a few other pedestrians around the scene who had also stopped, specifically, a heating, ventilation and air conditioning (HVAC) truck with three men in it and the EC. Richard truck.
They all walked across the LIE to the defendant’s car. At that time the defendant was still in the car and he appeared really jittery, nervous and upset. He got out of the car and sat against the wall; one of the HVAC men helped him get his phone out of his car and stayed with him. According to this witness the police officer arrived a short time later. The officer parked his police vehicle and put his flashers on. When the officer walked across the LIE to check on defendant, a red Explorer in the left lane put on his flashers. This witness further stated that traffic was trying to move past at five miles per hour; the cars were driving around the shoulder or going past the middle lane. Then all of a sudden he saw a car in the HOV lane traveling at about *647 60 miles per hour (mph). There was a large impact with the police officer and the Camry. This witness estimated that the elapsed time from the Honda/Camry accident to the striking of the police officer by the black Escalade was in the range of 5 to 10 minutes.
The driver of the black Escalade, the vehicle that hit and killed Officer Olivieri, testified in the grand jury without a waiver of immunity. He stated that he entered the Long Island Expressway eastbound at exit 33 and entered into the far left lane, and eventually into the HOV lane. As he was approaching exits 34 and 35, the driver testified that he was traveling between 50 and 60 mph. He stated that he saw strobe lights to his right, and looked at what appeared to be an accident scene; he saw the damaged red Honda and the police cars near the Honda in the lanes to his right. However, by the time he turned his eyes back on the road, he saw Officer Olivieri standing over the defendant’s Toyota Camry perpendicular to the expressway’s divider, but it was too late for him to do anything. While he slammed on his brakes and attempted to swerve, everything happened so rapidly that he closed his eyes and yelled until the car came to an instant stop when it hit Officer Olivieri and the Camry.
An expert testified that, upon a review of the information from the Escalade’s black box, the Escalade was traveling at a speed of 40 mph five seconds before the crash and the brakes were not applied until one second before the crash.
Officer Olivieri had an obvious deformity to his right lower leg and right arm. When the ambulance arrived the officer was not breathing and had no pulse. Officer Olivieri was transported to North Shore Manhasset where he was pronounced dead. The defendant, James Ryan, was transported by ambulance to Nassau University Medical Center. The toxicology report resulting from blood samples taken upon arrival at the hospital at 5:49 a.m. on October 18, 2012 indicates that the defendant’s blood alcohol level was .12%. In an interview conducted by Homicide Detective John Lapine at the Nassau University Medical Center the defendant admitted to having consumed three vodka and Sprite drinks, the first of which was a two shot vodka drink, while at Three Cups Lounge.
Detective Edward Wilson, the driver of the Honda, suffered serious physical injuries as the result of the accident between himself and the defendant.
*648 Legal Principles
Pursuant to CPL 210.20 (1) (c), the defendant, James Ryan, moves to dismiss counts 1 through 7 alleging the evidence presented to the grand jury concerning the death of Police Officer Olivieri was legally insufficient to establish the offenses charged.
On a motion to dismiss an indictment or counts contained therein, the court’s inquiry is confined to the legal sufficiency of the evidence and not its adequacy or weight. (People v Galatro, 84 NY2d 160 [1994].)
In the context of a motion to dismiss an indictment, the sufficiency of the People’s presentation is properly determined by a review of the evidence in the light most favorable to the People which, if unexplained and uncontradicted, would warrant a conviction by a petit jury. {Galatro.)
If the grand jury presentation, when viewed in a light most favorable to the People without benefit of explanation, contradiction or clarification, established each and every element of the crimes charged thereby warranting a conviction by petit jury, then the defendant’s motion to dismiss must be denied. (People v Sanford, 4 Misc 3d 180 [Sup Ct, Kings County 2004].)
Discussion
The issue presented in the case at bar is whether the defendant, James Ryan, as the result of his driving while intoxicated, caused the death of Police Officer Joseph Olivieri.
Every homicide requires proof that the defendant caused the death of a victim. The standard to be applied is whether the defendant’s conduct was a sufficiently direct cause of death. (People v Kibbe, 35 NY2d 407 [1974].) It is not necessary that the ultimate harm be intended by the defendant but that the harm was a foreseeable consequence reasonably related to the acts of the accused.
The People, in support of their argument that this defendant caused the death of Officer Olivieri, cite the recently decided case, People v Uribe (109 AD3d 844-[2d Dept 2013]).
In Uribe, the defendant, while intoxicated, was speeding on a dark suburban road passing a witness who observed the defendant’s SUV slam into a tree. Approximately 10 seconds after the initial collision, a taxicab slammed into the defendant’s vehicle causing it to lie across the dimly illuminated roadway. Fifteen seconds later, a motorcyclist slammed into the vehicle. The *649 cyclist was thrown from the motorcycle and killed. The defendant was charged and subsequently convicted of manslaughter of the motorcyclist.
The court distinguishes Uribe from the evidence presented to the grand jury in this case. In Uribe, the evidence indicated a clear seamless chain of events directly attributable to the defendant’s intoxicated operation of his motor vehicle. The series of accidents was compressed into a 45-second window without any intervening conduct by a third-party actor, which could have alleviated the defendant’s culpability.
It is therefore clear in Uribe that the death of the motorcyclist, while not intended, was reasonably foreseeable during the course of a chain reaction car accident, initiated by an intoxicated defendant’s operation of a motor vehicle, rendering him criminally liable for the resulting death.
In the instant case, the evidence presented to the grand jury reveals a 5-to-10-minute gap from the time of the accident with the Honda until the police officer is struck by the Escalade. It was not, as in Uribe, a continuing chain of events. From the time that the defendant and the Honda collide, causing defendant’s car to be in a somewhat perpendicular position to the Jersey wall in the HOV lane, a number of people have stopped their vehicles and were walking on the LIE across the lanes of traffic; there are three men from the HVAC truck, one from the EC. Richard truck, the detective from the Honda and the other eyewitness. All of these people were across the LIE and at the defendant’s vehicle before Officer Olivieri arrived on the scene. These civilians deemed that the area was safe enough that they were walking around the lanes of the expressway at the accident scene, with no apparent fear of being hit by any traffic.
Traffic had, in fact, been stopped by people and those not stopped were proceeding at only five mph as they tried to pass the accident scene on the shoulder or around the middle lane. The defendant also was out of his vehicle and crouched down along the Jersey wall when Officer Olivieri arrived at the Camry.
Although it has been held that a person whose actions result in a victim’s presence on a major highway should reasonably foresee that a victim could be struck and killed by a vehicle, a determination must be made to ascertain that the third-party driver’s operation of his automobile was not an intervening cause, sufficient to relieve the defendant of criminal liability for *650 the directly foreseeable consequences of his actions. (People v Kern, 75 NY2d 638 [1990], cert denied 498 US 824 [1990].)*
Based upon the evidence presented to the grand jury, the court finds that the third-party driver grossly deviated from the standard of care a reasonable person would have observed under the circumstances. The operator bypassed stopped traffic proceeding into the accident scene at a speed of at least 40 mph. He engaged in rubbernecking causing him to fail to see the officer directly in front of him. He failed to take evasive action. He closed his eyes just prior to impact only applying his brakes one second before striking the police officer. Moreover his was the only vehicle traveling in the HOV lane.
The court also holds that the foregoing evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would not warrant a conviction by a petit jury, as the evidence establishes that the third-party driver’s operation of his motor vehicle constitutes an intervening cause sufficient to relieve the defendant Ryan of criminal culpability in the tragic death of Officer Olivieri. In this case the death of Officer Olivieri is solely attributable to the driver of the Escalade, and not at all induced by the defendant Ryan. (Matter of Anthony M., 63 NY2d 270, 280 [1984].)
This decision by no means condones the alleged criminal conduct of the defendant in driving under the influence of alcohol in a very reckless manner and causing two accidents on the LIE. Those charges will remain in this indictment. However, the law constrains this court from holding him criminally liable for the very tragic death of Officer Joseph Olivieri and accordingly counts 1 through 7 of the indictment are dismissed.
As the grand jury proceeding was not defective and the integrity of the grand jury not impaired, the remaining counts will proceed and pretrial hearings will be scheduled.
Wherefore, based upon the foregoing, the defendant’s motion to dismiss counts 1 through 7 is granted. The remainder of defendant’s motion is denied.

 It should be noted that the group of cases, People v Matos (83 NY2d 509 [1994]), People v DaCosta (6 NY3d 181 [2006]), and People v Kern, all involve situations in which either the police pursued a defendant into traffic or a victim was pursued into traffic by a defendant.