People v Ryan (2018 NY Slip Op 03380)





People v Ryan


2018 NY Slip Op 03380


Decided on May 9, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 9, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
MARK C. DILLON
JEFFREY A. COHEN
ANGELA G. IANNACCI, JJ.


2016-02266
 (Ind. No. 486/13)

[*1]The People of the State of New York, respondent,
v
James Ryan, appellant.


Hug Law, PLLC, Albany, NY (Matthew C. Hug of counsel), for appellant.
Madeline Singas, District Attorney, Mineola, NY (Tammy J. Smiley, Yael V. Levy, and Sarah S. Rabinowitz of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Philip M. Grella, J.), rendered March 9, 2016, convicting him of manslaughter in the second degree, vehicular manslaughter in the second degree, aggravated criminally negligent homicide, criminally negligent homicide, assault in the third degree, reckless driving, driving while intoxicated (two counts), reckless endangerment in the second degree, and leaving the scene of an incident without reporting, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is modified, on the facts, by vacating the convictions of manslaughter in the second degree, vehicular manslaughter in the second degree, aggravated criminally negligent homicide, and criminally negligent homicide, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed.
The charges against the defendant arise from an incident that occurred in the pre-dawn hours of October 18, 2013. The trial evidence showed that the defendant was driving eastbound on the Long Island Expressway (hereinafter the expressway) in Nassau County, when his vehicle sideswiped another vehicle. Shortly thereafter, the defendant stopped short in front of another vehicle, or abruptly changed lanes and "cut off" that vehicle, resulting in a second collision. The defendant's vehicle spun and came to rest in the high-occupancy vehicle (hereinafter HOV) lane of this four-lane stretch of the expressway, facing a barrier wall. The HOV lane was on the far left of the expressway, and the other three lanes of traffic were to the right of the HOV lane. Several other drivers stopped along the right shoulder of the expressway, and some of those individuals walked across the roadway to assist the defendant. One driver stopped his vehicle in the far-left lane of the expressway, roughly adjacent to the defendant's vehicle, and that driver left his headlights on. Several minutes after the second collision, a police officer responded and parked his vehicle on the far-right side of the roadway, with the emergency lights activated.
The responding police officer walked across the roadway and, while standing next to the defendant's car, spoke to the defendant. At this point, according to trial witnesses, traffic was continuing to proceed slowly through the accident scene, using the center lane of the three regular lanes of traffic, which was the only open lane, and driving past or over some collision debris. A driver in a black sport-utility vehicle (hereinafter SUV) approached the scene.
The trial evidence, including the evidence derived from a "black box" event recorder in the SUV, showed that the driver of the SUV approached the scene at 40 miles per hour, then slowed to only 37 miles per hour as he approached the defendant's vehicle. The driver of the SUV testified that, as he neared this area, his attention was focused on the right side of the roadway, where there were several stopped vehicles and a police patrol vehicle with flashing lights. The SUV struck the defendant's vehicle and then struck the police officer. The driver of the SUV testified that he did not brake until one second prior to the impact. The police officer died as a result of the accident. The trial evidence showed that the defendant was found to have a blood-alcohol content of 0.12% upon his arrival at a hospital approximately one hour after this incident.
Upon a jury verdict, the defendant was convicted of manslaughter in the second degree, vehicular manslaughter in the second degree, aggravated criminally negligent homicide, criminally negligent homicide, assault in the third degree, reckless driving, driving while intoxicated (two counts), reckless endangerment in the second degree, and leaving the scene of an incident without reporting.
In evaluating a challenge to a conviction based on the legal sufficiency of the trial evidence, a court must "determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (People v Bleakley, 69 NY2d 490, 495; see People v Contes, 60 NY2d 620, 621). The court, while viewing the evidence in the light most favorable to the People, must determine whether any rational trier of fact could have found that every element of the crime charged was established beyond a reasonable doubt (see People v Lewis, 64 NY2d 1111, 1112; People v Contes, 60 NY2d at 621).
"To be held criminally responsible for a homicide, a defendant's conduct must actually contribute to the victim's death by set[ting] in motion' the events that result in the killing" (People v DaCosta, 6 NY3d 181, 184, quoting People v Matos, 83 NY2d 509, 511 [citation omitted]). "Liability will attach even if the defendant's conduct is not the sole cause of death if the actions were a sufficiently direct cause of the ensuing death'" (People v DaCosta, 6 NY3d at 184, quoting People v Stewart, 40 NY2d 692, 697 [citation and internal quotation marks omitted]). More than an " obscure or merely probable connection' between the [defendant's] conduct and result is required" (People v DaCosta, 6 NY3d at 184, quoting People v Stewart, 40 NY2d at 697 [internal quotation mark omitted]). Rather, "an act qualifies as a sufficiently direct cause when the ultimate harm should have been reasonably foreseen'" (People v DaCosta, 6 NY3d at 184, quoting People v Matos, 83 NY2d at 511; see Matter of Anthony M., 63 NY2d 270, 280; People v Stewart, 40 NY2d at 697). The critical inquiry is whether the defendant's conduct was an "actual contributory cause of [the] death, in the sense that [it] forged a link in the chain of causes which actually brought about the death'" (Matter of Anthony M., 63 NY2d at 280, quoting People v Stewart, 40 NY2d at 697). An intervening, independent act will not constitute a superseding cause that exonerates a defendant, unless " the death is solely attributable to the secondary agency, and not at all induced by the primary one'" (Matter of Anthony M., 63 NY2d at 280, quoting People v Kane, 213 NY 360, 270; see People v Bonilla, 95 AD2d 396, 410).
At bar, the People adduced legally sufficient evidence that the defendant's actions set in motion the events that led to the death of the police officer, and that the defendant's conduct was a sufficiently direct cause of that result. It was reasonably foreseeable that the defendant's conduct, including driving while intoxicated, causing the initial collision, failing to stop after the initial collision, and causing a second collision, would cause a dangerous condition on the roadway that would pose a danger to police or other first responders, particularly in the immediate aftermath of the incidents and prior to the securing of the accident scene (see People v DaCosta, 6 NY3d at 186; People v Uribe, 109 AD3d 844, 844; People v Cipollina, 94 AD3d 1549, 1549; cf. People v Ballenger, 106 AD3d 1375). The People adduced legally sufficient evidence of causation as to the counts of manslaughter in the second degree, vehicular manslaughter in the second degree, aggravated criminally negligent homicide, and criminally negligent homicide.
In addition, the jury charge as to the principles of causation was proper, as it was based on the model charge contained in the Criminal Jury Instructions (see CJI2d[NY] Penal Law art. 125 - Causation; People v Uribe, 109 AD3d at 844; see also People v Prospect, 50 AD3d 1064, 1064; People v Lubrano, 43 AD3d 829, 830; People v Pedro, 36 AD3d 832, 833; People v [*2]McDonald, 283 AD2d 592, 593). Contrary to the defendant's contention, the Supreme Court did not err in curtailing cross-examination questions of the driver of the SUV regarding his alleged lengthy record of driving offenses, his alleged receipt of a grant of immunity, and the "offenses he could have been charged with" arising from this incident. While the SUV driver had a record of driving violations that went "back to the 1980s," including seven accidents from 1989 to 2015, and an alleged 30 convictions of driving offenses such as speeding, failure to yield right of way, failure to obey traffic control devices, operating without insurance, and operating without a license, these issues were of minimal, if any, relevance to the issue of whether it was foreseeable to the defendant that a driver would approach this accident scene and collide with one of the stopped vehicles and/or a pedestrian, and had the potential to mislead or confuse the jury (see People v Best, 152 AD3d 617; People v Caballero, 137 AD3d 929, 930; People v Legere, 81 AD3d 746, 750; People v Gaviria, 67 AD3d 701; People v Francisco, 44 AD3d 870).
However, the jury verdict as to the manslaughter and homicide counts was against the weight of the evidence. In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d at 495). Here, the verdict as to the manslaughter and homicide counts was against the weight of the evidence, particularly in light of the evidence that the driver of the SUV that struck the police officer failed to pay attention to conditions on the roadway, including the presence of multiple stopped vehicles and debris on the road, and approached the accident scene at a speed in excess of the speed at which other vehicles were traveling (see People v Romero, 7 NY3d 633; see also People v Ballenger, 106 AD3d at 1378-1379). Unlike our dissenting colleague's opinion, we find that the officer's death was not "temporally proximate" to the defendant's conduct. Indeed, the decision our colleague relies upon as instructive is illustrative of the lack of temporal proximity in this case. In People v Uribe (109 AD3d 844), within seconds after an intoxicated and drugged defendant crashed his SUV into a tree, causing his vehicle to spin around and face oncoming traffic without its headlights on, an instantaneous chain reaction of collisions resulted in the death of a motorcyclist who was the operator of the third vehicle in the chain-reaction accident. Conversely, in the instant matter, a full seven to ten minutes passed between the time the defendant's vehicle came to rest on the roadway and the time when the police officer was struck by the SUV. During this period of time, several other vehicles stopped in the area and illuminated the scene with their lights, debris was strewn across the roadway at or just west of the accident site, and traffic was building up as other drivers either stopped, exited the expressway, or cautiously negotiated the accident scene by traveling slowly through the center lane, which was the only lane open to traffic prior to the fatal collision. Unlike the situation in People v Uribe, this was not one continuous chain-reaction accident that unfolded within a matter of seconds. Rather, a substantial amount of time passed between the accidents involving the defendant's vehicle and the subsequent accident in which the officer was struck by the SUV.
Contrary to the defendant's contention, viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620), there was legally sufficient proof of causation as to the count of assault in the third degree (see People v Coleman, 148 AD3d 717, 717; People v Keegan, 133 AD3d 1313). The People also adduced legally sufficient proof of causation as to the counts of reckless endangerment in the second degree (see People v Jakobson, 119 AD3d 815, 818; People v Carrington, 30 AD3d 175; People v Ingram, 234 AD2d 318), reckless driving (see People v Earley, 121 AD3d 1192, 1193; People v Goldblatt, 98 AD3d 817, 819; People v Kohler, 85 AD3d 1203), and leaving the scene of an incident without reporting (see People v Grasing, 152 AD3d 794, 794; People v Kohler, 85 AD3d 1203). Moreover, the verdict was not against the weight of the evidence as to those counts (see People v Romero, 7 NY3d 633).
Contrary to the defendant's contention, the sentences imposed with respect to the counts of assault in the third degree, reckless endangerment in the second degree, reckless driving, and leaving the scene of an incident without reporting, were not excessive (see People v Suitte, 90 AD2d 80).
In light of our determination, we need not reach the defendant's remaining contentions.
MASTRO, J.P., COHEN and IANNACCI, JJ., concur.
DILLON, J., dissents, and votes to affirm the judgment, with the following memorandum:
I respectfully dissent and vote to affirm the judgment in all respects.
The issue that ultimately divides our panel is whether the convictions of manslaughter in the second degree, vehicular manslaughter in the second degree, aggravated criminally negligent homicide, and criminally negligent homicide should be vacated as against the weight of the evidence. The specific ground on which this divided opinion is based is whether the operation of a sports-utility vehicle (hereinafter SUV) by another driver broke the chain of causality between the defendant's intoxicated driving on the one hand and a police officer's death on the other.
In order for the defendant to be held criminally liable for the officer's death, the defendant must have engaged in conduct that "actually contribute[d]" to the police officer's death (People v DaCosta, 6 NY3d 181, 184) by setting into motion the events that resulted in the death (see People v Matos, 83 NY2d 509, 511; People v Ryan, 125 AD3d 695, 697). As noted by this Court in an earlier appeal associated with the grand jury evidence in this matter, the defendant's actions need not be the sole cause of death and the defendant need not have committed the fatal act to be liable (see People v Ryan, 125 AD3d at 697, citing People v Matos, 83 NY2d at 511-512). The test is whether it may be reasonably foreseen that the defendant's actions would result in the victim's death, and if so, whether the defendant's actions constitute a sufficiently direct cause of death as to warrant criminal liability (see People v DaCosta, 6 NY3d at 186; People v Matos, 83 NY2d at 512; People v Kibbe, 35 NY2d 407, 412; People v Ryan, 125 AD3d at 697).
In reviewing the weight of the evidence, the court must first determine whether, based upon all of the credible evidence presented at trial, a different finding would not have been unreasonable (see People v Romero, 7 NY3d 633, 643). If so, the court must, in the second instance, weigh the relative probative force of the conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony, and if the trier of fact failed to give the evidence the weight it should be accorded, the court may set aside the verdict (see id. at 643; People v Mateo, 2 NY3d 383, 415; CPL 470.15[5]). "Empowered with this unique factual review, intermediate appellate courts have been careful not to substitute themselves for the jury" (People v Bleakley, 69 NY2d 490, 495). "Great deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (id. at 495).
Here, in my view, the jury's verdict on the manslaughter and homicide counts was not against the weight of the evidence. At approximately 4:30 a.m. on October 18, 2012, the defendant, while driving with a blood alcohol content exceeding the legal limit, caused two separate accidents with two separate vehicles in the same general vicinity of the Long Island Expressway (hereinafter the expressway), resulting in the defendant's vehicle coming to a stop in the third-from-right travel lane. The defendant never attempted to position his vehicle off to the right, as did the drivers of the two vehicles involved in the other accidents with the defendant. The incident that resulted in the death of the police officer occurred at the precise location where the defendant's vehicle stopped in the roadway, and within approximately seven to ten minutes of that stop. Therefore, the police officer's death was geographically and temporally proximate to the defendant's conduct leading to the defendant's motor vehicle being stopped in the middle of the high-occupancy vehicle lane (see People v Uribe, 109 AD3d 844).
People v Uribe (id.) is instructive, as it involved an intoxicated and drugged defendant who crashed his SUV into a tree, causing the SUV to spin around and face oncoming traffic with its headlights off. Seconds later a taxi cab struck the SUV, and a few seconds after that, a motorcycle struck the taxi cab, killing the motorcyclist. Although the defendant argued in Uribe that the taxi cab and motorcycle were unforeseeable superseding causes of the motorcyclist's death, this Court affirmed the defendant's conviction of vehicular manslaughter in the second degree, finding it was not against the weight of the evidence as to issues of foreseeability and causality. In contrast, People v Ballenger (106 AD3d 1375), relied on by the defendant, is readily distinguishable and not controlling here. In Ballenger, the automobile accidents were too attenuated to support the defendant's conviction of two counts of criminally negligent homicide. The defendant in Ballenger crashed his vehicle in a manner that obstructed the roadway and backed up traffic for a considerable [*3]distance. The deaths at the end of the accident chain occurred 30 minutes after the defendant's accident, and half a mile from where the defendant had crashed his vehicle. Here, unlike in Ballenger, there was no attenuation as to location, and minimal attenuation as to time.
The jury's verdict is not against the weight of the evidence for an additional salient reason. A trial witness was in the immediate vicinity of the accident involving the defendant's vehicle, the SUV, and the police officer. His testimony provided the greatest level of eyewitness detail about the mechanics of the police officer's death. The witness described the SUV hitting the rear corner panel of the defendant's vehicle, which "spun the [defendant's] car and kicked the officer up in the air." According to the witness, the police officer "turned over his left shoulder and looked at me, and then got hit, and then he got flown up in the air and the [SUV], being higher, hit him up top on his hood." No other witness provided a different description of how the police officer was struck at the scene. Thus, the police officer's death involved contact with not one, but two vehicles—the defendant's vehicle when it spun and hit the police officer, propelling him into the air, and the SUV that then struck the police officer with its hood. Clearly, the defendant's motor vehicle was an integral instrumentality physically and directly involved in the police officer's death. It was present at the time and place of the police officer's death, because the defendant, while intoxicated, and in the pre-dawn darkness, engaged in conduct resulting in his motor vehicle being in a position of danger, in the middle of an expressway travel lane after two earlier accidents in the vicinity. The defendant's vehicle, being a direct instrumentality in the events leading to the police officer's death, brings the defendant within the chain of causality, and his conduct at the scene rendered it foreseeable that such results could arise (see People v Uribe, 109 AD3d at 844).
As in most every trial, there were conflicting inferences to be drawn from the evidence, including the inference accepted by the majority that the SUV was a sole superseding cause of the police officer's death. However, the jury, which is afforded great deference for its opportunity to view witnesses, hear testimony, and observe the demeanor of witnesses, could logically and credibly have found on this record the requisite criminal negligence (see Penal Law §§ 125.10, 125.11), recklessness (see Penal Law 125.15[1], and intoxicated operation of a motor vehicle causing death (see Penal Law § 125.12[1]), sufficiently proximate in time and place, to support the convictions rendered.
In my further view, the remaining issues raised by the defendant on appeal are without merit. For these reasons, the judgment should be affirmed.
ENTER:
Aprilanne Agostino
Clerk of the Court